Argued June 19, 1893; decided July 10, 1893.]

## SMITH v. KELLY, SHERIFF.

[S. C. 33 Pac. Rep. 642.]

1. TAXATION — BOARD OF EQUALIZATION — MORTGAGES — CLASSIFICATION OF REAL PROPERTY — CODE, §§ 2770, 2771, 2773 — LAWS, 1891, P. 182, §§ 7, 8.— Under the provisions of sections 7 and 8 of Session Laws, 1891, p. 182, providing that the state board of equalization shall consider real estate and personal property separately in equalizing the value of property in the different counties, and that they shall add to or subtract from the aggregate valuation of the real and several classes of personal property, such per centum in each case as will bring the same to its fair money value; and under the further provisions of sections 2770, 2771, and 2773, dividing real estate into three classes, consisting of (1) city, village, or town property; (2) mortgages, deeds of trust, contracts, or obligations whereby land is made security for the payment of a debt; and (3) all

other real property,— the power of the State Board of Equalization is not limited to changing the aggregate valuation of all the three classes of real property, but it may increase or diminish the aggregate valuation of any of the separate classes of real property, as, for example, the aggregate valuation of mortgages, without changing any of the other classes. *Or. & Cal. R. R. Co.* v. *Croisan*, 22 Or. 393, cited and approved.

2. TAXATION — INCREASE BY STATE BOARD OF EQUALIZATION ·OF ASSESSED VALUATION — CONSTITUTION, ART. IX., § 1.— If all of one district class of property is equally assessed in proportion to its value, the fact that another class may be assessed at a different rate in proportion to its value, is not a violation of the constitutional provision that assessment and taxation must be uniform. Const. Art. IX., § 1.

3. EVIDENCE.— The claim that the State Board of Equalization wilfully and arbitrarily assessed mortgages in Multnomah County at a higher per cent than other real property in said county for the year 1892 is not sustained by the evidence.

4. STATUTORY CONSTRUCTION — REPEAL WITHOUT SAVING CLAUSE.— A statute repealing or modifying the remedy of a party by suit or action, should not be construed to affect proceedings brought before the repealing statute was enacted. *Newsome* v. *Greenwood*, 4 Or. 119, cited and approved. By analogy the assessment of property and levying of a tax thereon having been completed before the statute authorizing such action was repealed. the collection of the tax so levied will not be thereby affected, even though the repealing act contained no saving clause, since everything will relate back to the date of the levy.

5. IDEM — LEGISLATIVE INTENT.— It is a general rule that the repeal of a special tax law destroys the remedy for enforcing the collection of the tax, unless the remedy be reserved; but when a tax system is revised, and the former law repealed, the legislative intent is presumed to be of prospective force only, and prior valid assessments will not be affected.

6. IDEM— CONTEMPORANEOUS STATUTES.— Contemporaneous statutes and those *in pari materia* should be construed together, for the purpose of arriving at the legislative intent. Within this rule the repeal of certain sections of a tax law, without any saving clause as to the taxes then due and assessed, does not prevent their collection, where it is followed eleven days later by another law providing that such taxes shall be collected in the same manner as had been previously employed.

## Multnomah County: LOYAL B. STEARNS, Judge.

This is a suit by J. E. Smith against Multnomah County and Penumbra Kelly, its sheriff, to perpetually enjoin the collection of a tax levied upon a mortgage of real property taken by plaintiff as security for the payment of nine thousand dollars. The complaint alleges

XXIV. OR.—30.

that all real and personal property in said county was assessed at fifty per cent of its true cash value, and that the assessment roll was examined and approved by the county board of equalization at such valuation, but that the state board arbitrarily increased the assessment upon the real property, including city and town lots, to sixty-five per cent, and upon mortgages to one hundred per cent, of such true cash value; that the county clerk, in making the tax roll of said county, inserted the values so increased, extended the tax thereon, attached a warrant thereto, and placed it in the hands of the sheriff for collection; that plaintiff's mortgage by said increase in the valuation was taxed at one hundred and seventy-five dollars and fifty cents, but should have been no more than one hundred and four dollars and seven cents, which sum he tendered the sheriff in full satisfaction of the tax thereon, but that said officer refused to accept the tender; and that the tax creates a cloud upon the plaintiff's mortgage. To prevent the collection of this alleged overcharge, he prayed the injunction.

The answer denied these material allegations, and, the case being at issue, was tried by the court and a decree rendered dismissing the complaint, from which the plaintiff appeals. He contends, *first,* that the state board of equalization had no authority to classify mortgages for taxation separate from real estate; *second,* that if such power were given, it would be in contravention of section 1, article IX. of the constitution, and that an assessment upon such classification would be void; *third,* that the evidence shows that the state board of equalization assessed his mortgage at a higher percentum than other real estate in said county; and, *fourth,* that there is now no law under which a mortgage upon real estate can be assessed or taxes levied or collected thereon. Affirmed.

*Geo. H. Williams,* and *William D. Fenton,* for Appellant.

*Geo. E. Chamberlain,* attorney-general, and *John H. Hall* ( *Wilson T. Hume,* district attorney, on the brief), for Respondents.

MR. JUSTICE MOORE delivered the opinion of the court:

1.  Section 7 of the act creating the state board of equalization provides that said board, in equalizing the valuation of property as assessed in the different counties, shall consider real estate, including town and city lots, separately from personal property; and section 8 of said act provides that said board in the performance of its duties shall add to or subtract from the aggregate valuation of the real and several kinds or classes of personal property of every county which they believe to be valued below or above the true and fair value thereof in money, such per centum in each case as will bring the same to its true and fair value in money:   Session Laws, 1891, p. 182.   From these sections, appellant contends that there is but one class of real property, and that the state board of equalization had no authority to make any change except in the aggregate value thereof.

The general rule for the interpretation of ambiguous statutes is to give them such constructon as shall suppress the mischief, and advance the remedy, putting down all subtile inventions and evasions for continuance of the mischief, and adding force and life to the cure and remedy, according to the true intent of the makers of the act: *Parkinson* v. *State,* 74 Am. Dec. 522.   The manifest object and intent of the legislature in creating the state board of equalization was to secure uniformity of assesment of the different classes of taxable property between the several counties.   The tax levy for state purposes being uniform over the whole territory, and based upon the values fixed by the county assessor, as approved by the local board, if that officer could under value property, notwithstanding

the law requires him to assess it at its full cash value
(Code, § 2770), the amount of the state taxes collected
thereon would be correspondingly low, and the temptation
would present itself to each county assessor to undervalue
property so that his county might escape the payment of
as much as possible of its state taxes, while a high rate of
taxation for county purposes could be computed upon a
low assessment and thus meet the demands of the county.
Such a method would seem to offer a premium to that
county whose assessor made the lowest assessment of prop-
erty. The legislature created the state board of equaliza-
tion to suppress the mischief that might possibly arise from
such a system of assessment, and provided the remedy
by equalization among the several counties.

Another rule of interpretation is that all the sections of
a statute shall be considered together so as to harmonize
and give effect to each clause if possible. Section 3 of
the act prescribes the oath of office required of the mem-
bers of the board, and each swears that he will equalize all
the property, both real and personal, as enumerated upon
the equalized county assessment rolls of the several coun-
ties of the state. Real estate is divided into three classes:
(1) city, village, or town property, which, if divided into
lots and blocks, shall be separately described on the assess-
ment roll: Code, §§ 2770, 2771; (2) mortgages, deeds of
trust, contracts or obligations whereby land situated in no
more than one county is made security for the payment of
a debt; and (3) all other real property, which is to be
described by legal subdivisions, or in such manner as to
make the description certain: *Idem*, §§ 2770, 2773. These
three classes are enumerated on the assessment roll by the
county assessor, and the members of the state board of
equalization swear that they will equalize them among
the several counties. If appellant's contention were true,—
that the several kinds of real property constituted but one
class, and if either kind was assessed in the judgment of

the board at its full cash value, and the others at less than such value,—then any addition to the aggregate valuation would increase the assessment of one kind of real property above its full cash value, and thus clearly become a violation of section 32 of article I. of the constitution, which requires that all taxation shall be equal and uniform. To illustrate: Mortgages might be assessed in a county at their full cash value, and the other kinds of real property at a nominal sum; in such case the state board of equalization would be powerless to remedy the evil, since any increase of the aggregate valuation would raise the assessed value of mortgages above their full cash value.

In *Or. & Cal. R. R. Co.* v. *Croisan*, 22 Or. 393 (30 Pac. 219), BEAN, J., says: "To say that the act creating the state board of equalization is a piece of hasty and crude legislation, is to say what is obvious; but laws of this kind are remedial in their character, intended to correct an admitted evil by requiring each county to pay its just proportion of the burden of maintaining the state government, to suppress wrong, and to promote the public good, and should be liberally construed, so as to bring under their operation, says Mr. Endlich, 'as well that which is within their meaning as that which is within their letter'; Endlich, Interpretation Statutes, 346. And when the act in question is so construed in connection with the provisions of the assessment law to which it relates, we think it manifest the board has power to revise and equalize the aggregate valuation of the several classes of real property authorized by law and enumerated upon the assessment rolls." Taking the several sections of the act together, and considering the mischief to be avoided, and the remedy proposed, by the act creating the board of equalization, we think the conclusion reached by this court as announced by BEAN, J., is correct.

2. The legislative assembly has, in the creation of the board of equalization, provided by law for a uniform and

equal rate of assessment and taxation, and prescribed such regulations as should secure a just valuation of all property, both real and personal, for the purposes of taxation, as required by section 1 of article IX. of the constitution. The record shows that all real estate, including mortgages, in Multnomah County, was valued, in the assessor's judgment, at fifty per cent of its full cash value. The value of the land cannot be definitely determined by an assessor nor any other person. He may make a relative valuation, but can only approximate the actual value, and so long as he exercises an honest judgment that is all that can be expected of any officer. Mortgages being for a fixed sum, their value can be definitely ascertained, while the value of land can only be relatively determined. This being so, can it be said that an assessment is unequal because the assessor erred in judgment as to the value of the land? If this were the rule, the collection of a tax could never be enforced. All that the constitution contemplates, or the statute prescribes, is that the different classes of property shall be equally and ratably assessed; and when an officer has exercised an honest discretion in appraising the value, this is all that can be expected of him. The state board of equalization concluded that when thirty per cent had been added to the appraised value of city, village, and town lots in Multnomah County, such property was then appraised at its full cash value, and that it was necessary to add one hundred per cent to the appraised value of mortgages in order to equalize their appraisement with that of the lots; that is, the state board of equalization considered that the assessor had appraised city, village, and town lots at seventy-six and twelve-thirteenths per cent of their true value, and by adding thirty per cent to that valuation they secured the assessment of such property at its full cash value, while it was considered that mortgages were assessed at only fifty per cent of their value, and that it was necessary to add one hundred per

cent to secure the same result and equalize the different classes among the several counties. It would seem that this was a uniform and equal rate of assessment and taxation, as near as could be determined by the exercise of an honest discretion on the part of the state board of equalization.

3. It is claimed that the state board assessed mortgages at a higher per cent than other real property in said county. The evidence shows that the board adopted a resolution to equalize real property at its fair value in money; that the members of the board visited several counties and tried to equalize the valuation of such property according to its true cash value. The evidence does not in our judgment show any wilful intent or arbitrary act on the part of the board to discriminate against the holders of mortgages or that class of property, and that the percentages added to the different classes of real property were, in the judgment of the board, necessary to bring the assessment of each to the full cash value thereof, as required by law.

4. The legislative assembly, on the tenth of February, 1893, repealed sections 2730, 2735, 2736, 2737, 2753, 2754, 2755, 2756, and 2757 of Hill's Code, commonly known as the Mortgage Tax Law, without any saving clause as to the taxes then due upon mortgages: Session Laws, 1893, p. 6. On the twenty-first of that month another act was passed by the legislative assembly, which provided that the taxes for the year 1892 should be collected in the same way and manner as they were collected prior to the meeting of the legislative assembly: Session Laws, 1893, p. 85. Each act had an emergency clause and went into effect on the date given. Appellant contends that the act of tenth of February swept away the taxes on mortgages, and that the subsequent act could not revive them.

There are three cogent reasons why the repeal without a saving clause should not destroy the remedy: *First,*

sections 2783–2786, Hill's Code, provide that the county court shall, at its term in September in each year, estimate and determine the amount of money to be raised in its county for county purposes, and apportion such amount, together with the amount of state and school tax required by law to be raised in its county, according to the valuation of taxable property in its county for a year, and such determination shall be entered at large in its records. Sections 2789–2791 provide that the governor, secretary of state, and state treasurer shall ascertain the total amount of revenue necessary for state purposes, and the rate of taxation to be levied upon each dollar of assessment subject to taxation, and apportion the said total revenue among the several counties according to the amount of property subject to taxation therein. Construing these sections together, it would appear that the several county courts of the state are required to levy the state, school, and county taxes at their September terms; and while the amount to be determined by the state officers for current expenses cannot be ascertained at that time, when apportioned it relates back to the levy of the county courts made at the September terms. The levy should be made by the several county courts at that time for the county and other known rates, and also for such rate as may be subsequently apportioned by the state officers for current expenses. "When an act of parliament is repealed, it must be considered (except as to transactions past and closed) as if it never existed": Potter's Dwarris on Statutes, 160. In Newsom v. Greenwood, 4 Or. 119, it was held that a statute repealing or modifying the remedy of a party by suit or action, should not be construed to affect suits or actions brought before the repeal or modification, and that when the suit or action had been commenced it followed the principle governing in the exceptional cases. This being the rule heretofore adopted, it would appear, as applied to the case at bar, that the

assessment of the property and levy of all taxes thereon "were past and closed" at the September term of the county courts preceding the repeal of the mortgage tax law on the tenth of February, 1893, thus bringing it within the exception to the general rule. The assessment and levy are equivalent to the commencement of a suit or action, and when the warrant is attached to the tax roll it becomes a judgment which relates back to the levy.

5. *Second,* It is a general rule that, unless reserved, the repeal of a special tax law destroys the remedy for enforcing the collection of the tax; but when a tax system is revised, and the former law repealed, the legislative intent is assumed to be of prospective force only, and hence prior valid assessments will not be affected by such repeal: Cooley on Taxation, 18. The sections repealed provide, in substance, that the mortgage note should not be assessed, but that the mortgage given to secure the debt should, for the purpose of assessment and taxation, be deemed real estate, and assessed to the extent of the debt secured; while section 2735 provided that the tax assessed upon mortgages should be a lien upon the debt and security, and that they might be sold to satisfy the tax. The repeal of the remedy cannot destroy the right. The owner of property owes a duty to the public to bear such a portion of the general burden as the value of his property bears to the value of the whole. Section 2803 of Hill's Code provides that in case any person shall refuse or neglect to pay the tax imposed on him, the sheriff shall levy the same by distress and sale of his goods and chattels; and section 2816 provides that if no personal property be found whereon to levy the warrant, it must be levied upon any real property of the person against whom the tax is levied or charged. The mortgage tax law was only a part of the general system, and the remedy for the collection of taxes due under it was furnished by sections 2803 and 2816, independent of section 2735. In *Belvidere*

v. *Warren R. R. Co.* 34 N. J. L. 193, it was held, in a simi-
lar case, that the repeal of the statute without a saving
clause did not destroy the remedy if the collection of the
tax was regulated by other acts, and that when the assess-
ment was made the force of the act authorizing it was ex-
hausted. This case was approved in *Main* v. *Savings
Bank,* 68 Me. 515. In the case at bar a remedy was found
in section 2735 which was repealed, but this remedy could
not be pursued if the taxpayer had any personal property
out of which the tax could be made. A remedy was also
provided by section 2816 in case no personal property was
found, identical with that of section 2735. The remedy
provided in section 2735 added nothing to the general
system, and hence its repeal could take nothing from it.

6. *Third,* The act of the twenty-first of February,
read in connection with the repealing act, leaves no room
for doubt as to the legislative intent in reference to the
collection of the tax already levied on mortgages. The
legislature of Texas on the third of June, 1873, passed an
act which repealed a tax law, without any saving clause:
Session Laws, Tex. 1873, p. 198. A supplemental act was
passed on the same day which provided that the repealing
act did not relinquish the right to any taxes theretofore
assessed: *Idem,* 206. In *Clegg* v. *State,* 42 Tex. 605, it
was said, in a suit to enforce the tax levied prior to the
repeal, that " A fair construction of the law under which
appellants claim this suit is brought, does not deprive the
state of the right to demand and collect taxes levied and
assessed under former laws, though repealed prior to its
institution: Potter's Dwarris, Statutes, 155, note 5; Sedg-
wick on Statutory and Constitutional Law, 31, 113. Evi-
dently it was not the intention of the legislature by the
passage of the act of the third of June, 1873, regulating tax-
ation, to relinquish the right to recover taxes previously
levied but not collected. To obviate all doubt, and guard
against controversy, a supplemental act to this effect was

passed on the same day. These two contemporaneous acts relating to the same subject matter, must be taken and considered as one statute." It is a well-recognized principle of statutory construction that contemporaneous statutes and statutes in *pari materia* shall be construed together as though they constituted one act, for the purpose of arriving at the intent of the legislature; and where a statute is made in addition to another statute on the same subject, without repealing any part of it, the provisions of both must be construed together: Sutherland on Statutory Construction, § 288. Applying this rule to the acts of the tenth and twenty-first of February, they must be construed together, and this will incorporate into the repealing act of the tenth of February, the saving clause of the twenty-first of February, and thus preserve the right to enforce the taxes upon mortgages, and hence the decree of the lower court is AFFIRMED.