Argued 14 November; decided 19 December, 1898.

## DAYTON v. MULTNOMAH COUNTY.

[55 Pac. 23.]

1. STATE BOARD OF EQUALIZATION—NECESSARY RECORD.—Under the law of 1891, the record on which the State Board of Equalization proceeds to equalize the assessments between different counties is an abstract of the different county records, and it is not necessary that the original rolls be filed at all: *Dayton* v. *Board of Equalization*, 33 Or. 131, approved.

2. IRREGULAR CLASSIFICATION.—The fact that a designated class of property has been subdivided by a county assessor will not invalidate the roll, for by adding the subdivisions the required classification is obtained: *Dayton* v. *Board of Equalization*, 33 Or. 131, approved.

3. JUDICIAL NOTICE.—The courts cannot take judicial knowledge that values have been unreasonably increased or diminished under a system adopted for ultimate equalization.

4. REVIEW OF PROCEEDINGS OF BOARD OF EQUALIZATION.—The appellate court will not disturb the judgment and findings of a board of equalization where it is not shown that the board acted arbitrarily or fraudulently in the equalization of values.

5. EQUALITY AND UNIFORMITY OF TAXATION.—The failure of the board of equalization properly to equalize assessments upon personal property throughout the several counties of the state does not produce such lack of equality and uniformity of taxation* as to invalidate its acts in equalizing values upon real property.

6. INJUNCTION—TENDER OF TAX.—A suit to enjoin the collection of part of a tax levy cannot be entertained until there has been a payment or tender of the amount admitted to be legal: *Goodnough* v. *Powell*, 23 Or. 525, approved.

From Multnomah :   JOHN B. CLELAND, Judge.

This suit was brought by Frank Dayton against Multnomah County to restrain the collection of certain taxes.

---

*The Oregon Constitution has two sections to which this paragraph may refer: Article I, § 32 * * * "and all taxation shall be equal and uniform." Article IX, § 1, "The legislative assembly shall provide by law for uniform and equal rate of assessment and taxation," etc.—REPORTER.

The State Board of Equalization, at its meeting in 1896, equalized the values as assessed by raising the assessment on certain classes of property in Multnomah County nearly $6,000,000, and raising the same classes of property in all the rest of the state about $3,500,000. In *Dayton* v. *Board of Equalization*, 33 Or. 131, this equalizing was declared void as to merchandise, and the tax levied on the increased valuation was annulled. Now this suit is brought to enjoin the collection of the tax on the increased value of the real estate. A decree was entered for defendants.

AFFIRMED.

For appellant there was an oral argument by *Mr. Edward B. Watson*, with a brief over the names of *Joseph Simon, E. B. Watson, Joseph & Meier*, and *Frank Schlegel*, to this effect:

(1). The state board had no jurisdiction, for the reasons that it had no certified copy of the assessment roll of Marion County before it, and none had either been transmitted to the Secretary of State, or even prepared or authenticated, as prescribed by law, when the board adjourned: 2 Hill's Ann. Laws, § 2788; *Oregon & California R. R. Co.* v. *Croisan*, 22 Or. 393, 400; *State* v. *Linn County*, 25 Or. 503, 504; *Dayton* v. *Board of Equalization*, 33 Or. 131 (50 Pac. 1009); *State* v. *Dodge County*, 20 Neb. 595 (31 N. W. 117, 121); *Moser* v. *White*, 29 Mich. 59; *Williams* v. *Mears*, 61 Mich. 86 (27 N. W. 863, 864).

(2). The divisions of real property into classes not provided for in the statute, and the assessment of each separately was an illegal classification, and therefore afforded no basis for the attempted equalization of state board: *Oregon & California R. R. Co.* v. *Croisan*, 22 Or. 393.

(3). The increase in the aggregate valuation of all property in the state, $9,414,549, does not appear from the record of the proceedings of the state board to have been "reasonably necessary to a just equalization," and could not have been "reasonably necessary" for that purpose, and is therefore void as being within the prohibition of the statutes: 2 Hill's Ann. Laws, p. 2006, § 6; *Suydam* v. *County of Merrick*, 19 Neb. 155 (27 N. W. 142); *State* v. *Dodge County*, 20 Neb. 595 (31 N. W. 117); *People* v. *Lathrop*, 3 Colo. 428; *State* v. *State Board of Equalization*, 18 Mont. 473 (46 Pac. 266–268).

(4). The increase in the assessment of real property in Multnomah County of $5,397,625, and that form of personal property described as "merchandise and stock in trade," in the same county, of $589,922, making a total of $5,987,547, against the presumption from the record that the original assessment of said property was correct and just, and without any evidence to overcome such presumption, or justify any increase, and without any discussion or consultation between a majority of the members of the board, who voted for such increase, and the minority, who voted against it, affords sufficient evidence that such majority did intentionally discriminate against the taxpayers of Multnomah County in voting said increase, and that the same was therefore inequitable in fact, and fraudulent in law, and should be enjoined: *Oregon Coal Co.* v. *Coos County*, 30 Or. 308; *Hotel Co.* v. *Biebe*, 86 Ill. 602; *Spring Valley Coal Co.* v. *People*, 157 Ill. 543 (41 N. E. 874); *Keokuk Bridge Co.* v. *People*, 161 Ill. 514 (46 N. E. 206); 1 High, Inj. (3 ed.), § 494.

For respondent there was a brief over the names of *R. & E. B. Williams*, and *Russell E. Sewall*, District Attorney, with an oral argument by *Mr. Richard Williams.*

34 OR.—16.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This suit was instituted by plaintiff, in behalf of himself and others similarly situated, to enjoin the collection by the Sheriff of Multnomah County of all taxes represented by the increased valuations placed upon "town and city lots," "improvements upon town and city lots," and "merchandise and stock in trade," by the State Board of Equalization at its regular session in December, 1896. The increase which the board attempted to make was twenty per cent. upon town and city lots and their improvements, under one classification, and twenty-five per cent. on merchandise and stock in trade within Multnomah County. The same matters are urged here that were presented and passed upon in the recent case of *Dayton* v. *Board of Equalization*, 33 Or. 131 (50 Pac. 1009), with an additional question which it is claimed results from the decision there announced. It is claimed, furthermore, that the sole question involved in that case was the validity of the attempted equalization of values upon "merchandise and stock in trade," and that the consideration of the other questions passed upon was unnecessary to a determination of the cause, and for that reason, as it pertains to those questions, the decision has not the force of a precedent; hence we are asked to review it, as to them, upon this hearing.

1. It was urged there, as here, that the board failed to acquire jurisdiction to proceed in the discharge of its statutory functions, for two reasons : First, because no certified copy of the assessment roll of Marion County, as equalized by the county board, had, previous to the adjournment of the state board, been received by the Secretary of State ; and, second, because the assessors of the several counties of the state had valued real

property upon the rolls under different heads or classifications from those which the state board is required to adopt in its work of equalization between the counties. As it pertains to the first objection, the present case is slightly different from the former. It is clearly shown here that the original roll of Marion County, as equalized by the county board, was actually before the State Board of Equalization while in session—a fact which was only inferred in the former proceeding—and that its secretary made abstracts from it for the use of the board, which were used in the process of equalization, but the question of jurisdiction was resolved upon the identical facts as now proven. The facts upon which the second objection is based are identical in each case.

2. A consideration of the latter objection necessarily involved the manner and form by which the board was required to proceed in the discharge of its functions; and it was held that, while the assessors had valued real property by subdivided classifications, it was only necessary, through the mental application of the simple process of addition, to resolve such classifications by aggregates to the two classifications which the board is required to adopt in the exercise of its powers, and therefore that the board had properly equalized real property under two classifications only—a deduction quite natural and necessary from the premises. Now it is said that the discussion of neither of these questions was involved or necessary to the determination of the question which was resolved in harmony with counsel's contention against the regularity of the proceedings of the board, whereby it was held that its action touching the equalization of personal property was without authority of law and void, because the board had attempted to equalize by classifications of that species of property not uniform throughout the several counties of the state.

The object of that proceeding, as here, was to test the legality of every step by which the board proceeded in its equalization of the assessments between the several counties of the state at that particular session; and hence its jurisdiction to entertain cognizance of the subject-matter was first attacked, and then followed the contentions touching the regularity of its proceedings, and it does seem to us that all these questions were fairly involved in the former proceeding. It may be said that neither of these jurisdictional questions constituted the very *lis mota* which proved to be involved in the controversy, but they were questions vital to the powers of the board to entertain cognizance of the matters which gave rise to the pivotal dispute, and we think were properly considered in that cause. But, however that may be, suffice it to say we have taken the pains to review our former holdings, and find no reason for revising them.

3.   It is objected that the board unnecessarily and unreasonably increased the aggregate of valuations upon real property, and for this reason its acts in equalizing such valuations are without validity. It is provided by section 6 of the act creating it (Laws, 1891, p. 182) that the board "shall equalize the assessment as hereinafter provided, but said board shall not reduce, nor shall it increase, the aggregate valuations, except in such amount as may be reasonably necessary to a just equalization;" and by section 8 that "said board shall add to the aggregate valuation of the real and several kinds or classes of personal property of every county which they believe to be valued below the true and fair value thereof in money, such per centum in each case as will bring the same to its true and fair value in money; they shall deduct from the aggregate valuation of the real and several kinds or classes of personal property of every county which they

believe to be valued above the true and fair value thereof in money, such per centum in each case as will reduce the same to the true and fair value in money.'' By legislative intendment money was made the standard by which the board is required to equalize values, and, it not appearing that it has proceeded otherwise, it must be taken to have properly discharged its duties in that respect. This is practically the holding in *Smith* v. *Kelly*, 24 Or. 464 (33 Pac. 642). The court cannot take judicial knowledge that values have been unreasonably increased or diminished under the system adopted in this state for ultimate equalization.

4. As it regards the alleged discrimination by the board against Multnomah County, it is very clear that the evidence produced at the trial does not show that the board acted willfully, arbitrarily, or fraudulently in the equalization of values as it pertained to said county, and hence we cannot disturb its findings and judgment on that contention.

5. The contention of counsel that the decision of the court in the former case, declaring the acts of the board void as they pertained to its attempted equalization of personal property, is inimical to uniformity, and hence to the validity of its equalization of values, as it pertained to the two classes of real property, is not without merit. But we are still of the opinion, however, that the rule that the failure of an assessment in particular instances does not avoid the entire assessment applies to the action of the board. Mr. Justice MILLER, of the Supreme Court of the United States, in passing upon the validity of an assessment under a statute which exempted railroad property from all other taxes, except one per cent. per annum, to be paid into the treasury, in alleged contravention of the state constitution, which declared that all taxation shall be uniform, after stating

that the constitutional question was not involved in the controversy, says: "It is not inappropriate to look to the consequences of holding that this failure to assess the railroads renders all other taxes void. It applies to the tax assessed for all other purposes as well as this tax. Every nonresident holder of property in the state could apply to me, and insist on an injunction against the tax on his property. And, if the state judges believe it to be void, they would be bound, on the same principle, to suspend the collection of all taxes throughout the entire state. A proposition which leads inevitably to such a result cannot be sound. I cannot, therefore, grant an injunction on this ground, whether the railroad property is liable to taxation or not:" *Muscatine* v. *Mississippi, etc. R. R. Co.*, 1 Dill. 536, 542 (Fed. Cas. No. 9,971). In that case the result of the nonassessment of railroad property was quite as far-reaching as the nonequalization of personal property in the one at bar. The same doctrine is applied where the mistake arises from a misapprehension of the law: *People* v. *McCreery*, 34 Cal. 432, 458, 459. See, also, Cooley, Tax'n, 154-156. And the court is not without precedent for its decision in *Dayton* v. *Board of Equalization.* See *Orr* v. *State Board of Equalization*, 2 Idaho, 923 (28 Pac. 416). We are therefore constrained to hold that the failure of the board to properly equalize the assessments upon personal property throughout the several counties of the state did not invalidate its acts in equalizing values upon the two classes of real property, and is, therefore, not inimical to uniformity and equality of assessment and taxation as required by the constitution.

6.   But, aside from all these questions, there is another which precludes us from granting the relief demanded by plaintiff; and that is, he has not tendered payment of the taxes which it is admitted were due, and

against which he has no cause to complain. Such taxes should be paid or tendered, before a suit will lie to enjoin that which is illegal or void: *Goodnough* v. *Powell*, 23 Or. 525 (32 Pac. 396). Nor does it make any difference that the suit is to avoid those only which are claimed to be illegal. The rule of application is the same in either case. These considerations affirm the decree of the court below, and it is so ordered.

AFFIRMED.

Decided 7 November; rehearing denied 19 December, 1898.