Decided 31 October, 1903.

### FLANDERS v. MULTNOMAH COUNTY.

[73 Pac. 1042.]

AMENDMENT OF STATUTES — IMPLIED REPEAL.

An amendment of a law under a constitutional provision requiring the statute to be set out in full as amended operates as an entire obliteration of the former statute from the time the new law goes into effect, and nothing can thereafter be done under its authority: *Smith* v. *Kelly*, 24 Or. 464, distinguished.

B. & C. Comp. §§ 3057, 3120, providing that the assessment for taxes shall begin on the first Monday in March, and setting forth the dates for all acts in reference thereto, are amended by Laws 1903, p. 295, setting them out in full as amended, and substituting an entire change of dates, making the assessment begin on the first Monday in January, etc., and providing that the new law shall go into force January 1, 1904. *Held*, that such amendment operated as an entire repeal of the former statutes, and, on the taking effect of the new law, no further proceedings could be had under the old, though the effect was to leave officials without authority to estimate and apportion the necessary tax for that year.

From Multnomah: JOHN B. CLELAND, Judge.

Suit by Maria L. Flanders against Multnomah County and its officers, wherein there was a decree as prayed, and defendants appeal. Submitted on briefs under Rule 16.

AFFIRMED.

For appellants there was a brief over the names of *John Manning*, District Attorney, and *Carey & Mays*, with an oral argument by *Mr. Chas. H. Carey*.

For respondent there was a brief over the names of *Chas. E. S. Wood, Stewart B. Linthicum*, and *J. Couch Flanders*, with an oral argument by *Mr. Linthicum*.

MR. JUSTICE WOLVERTON delivered the opinion.

This is a suit to determine, by way of injunction, the effect of certain changes contemplated by the legislature in the law relative to assessment and taxation (Laws 1903, p. 295). By express provision, the new law is to go into

effect and be in force from and after the 1st day of January, 1904. Section 3057, B. & C. Comp., provides that the assessor shall on the first Monday in March procure a blank assessment roll, and forthwith proceed to assess all taxable property within his county, and return such roll to the county clerk on or before the first Monday in September, with a full and complete assessment of such taxable property entered thereon; that the county court may, if necessary, extend the time for returning such roll until the first Monday in October; and that every person shall be assessed in the county where he resides on the 1st day of March of the year when the assessment shall be made. By the amendment thereto, the assessor will be required on the first Monday of January, 1904, and on the first Monday in January of each year thereafter, to procure a blank assessment roll, proceed with the assessment of the taxable property owned by each person on January 1st of each year, and return the same on or before the first Monday in July. Section 3060 of the compilation provides that the assessor shall give three weeks' public notice that on the last Monday in August the board of equalization will attend at the county clerk's office, publicly to examine the roll, make corrections, etc. The amendment provides for the meeting of such board on the first Monday in July. Section 3084 provides that the county court or the board of county commissioners shall, at its term in January of each year, estimate the amount of money to be raised in each county for county purposes, and apportion such amount, together with the amount of state and school taxes required by law to be raised in the county, according to the valuation of the taxable property in the county for the year. The amendment fixes the time for making the estimate and apportionment at the September term of each year. Section 3085 provides that, for the purpose of raising revenue for county purposes, the

county court or board of commissioners for each county shall, at its January term in each year, levy a tax upon all taxable property in its county, sufficient in amount to defray the expenses thereof. The amendment requires the levy to be made at the September term in each year. Section 3090 relates to the apportionment of revenues among the counties by the Governor, Secretary of State, and State Treasurer in January. The amendment requires it to be made in July of each year. Section 3106 provides for the payment of taxes on the first Monday in April and October of each year; the amendment, for the payment on or before the 31st day of December of the same year and the first Monday in the April following; section 3107, that the sheriff shall proceed to collect immediately after the first Monday in May; section 3112, that he shall extend the delinquent list on the roll after the first Monday of October; and section 3120, that upon the return of the roll to him he shall give notice of the sale of real property for delinquent taxes, to be made not later than March 1st of each year. The amendments of these sections require the sheriff to proceed to collect immediately after the first Monday in February, to extend the delinquent list after the first Monday in April, and to give notice of sale for delinquent taxes to be held not later than October 1st of each year. These sections are all amended in the usual manner, and as contemplated by the Constitution (Const. Or. Art. IV, § 22), by setting them out in full in the amendatory act as amended.

It will readily be observed that the purpose of the amendatory act is to change the dates upon which the several official acts designated shall be performed, the mode of assessment and levy and the manner of collection remaining the same. All the dates in the process are completely shifted; that is to say, instead of beginning the assessment on the first Monday in March, and making

it as of that date, returning the roll on or before the first
Monday in September, giving notice of the meeting of the
board of equalization on the last Monday in August to
examine and correct the roll, making the estimate and
levying the tax at the January term of the county court,
and apportioning the revenues by the state board to the
several counties in January, the amendments contemplate
that the assessment shall begin on the first Monday in
January, and be made as of that date; that the return
shall be made on or before the first Monday in July, notice
given of the meeting of the board of equalization to be
held on that day; that the estimate be made and tax levied
at the September term of the county court, and that the
apportionment of revenues to the several counties shall be
made in July, and instead of the taxes becoming payable
on the first Monday in April and October, and requiring
the sheriff to proceed to collect after the first Monday in
May, to extend the delinquent list on the roll after the first
Monday in October, and give notice of the sale of real
property for delinquent taxes to be made not later than
March 1st, the amendments contemplate that the taxes
shall become payable on or before December 31st and the
first Monday in April following; that the sheriff shall pro-
ceed with collections after the first Monday in February,
extend the delinquent list after the first Monday in April,
and give notice for the delinquent sale, to be held not later
than October 1st. The true situation is perfectly manifest.
The old statute relative to the matters alluded to is to be
replaced by the amendments, thus abrogating completely
the law as it now stands. It is not the case of a repeal,
either directly or by implication, except as the amend-
ments supersede and displace the old statute. The new
is substituted for the old, leaving no vestige of the old for
operation.

Such is the holding of the Supreme Court of Indiana,

under a constitutional clause providing the mode for revision and amendment precisely as ours, and from which ours was probably adopted, in *Blakemore* v. *Dolan*, 50 Ind. 194, 204, where the court say "that, when a section in an existing law is amended in the mode prescribed by the Constitution, it ceases to exist, and the section as amended supersedes such original section,  * * and becomes incorporated in, and constitutes a part of, the original act; and the original section is as effectually repealed and obliterated from the statute as if it had been repealed by express words." So it was held in *State* v. *Ingersoll*, 17 Wis. 651, where the court was considering the effect of a statute which provided that a certain section of a former statute should be "amended so as to read as follows," that the conclusion was irresistible that any provision of the section not found in the new act was repealed, saying: "This must be so, since the legislature says expressly that that section shall thereafter read and be to the effect following; then going on to enact a complete substitute for the former provision. In what clearer manner could the legislature indicate its intention to supersede, change, and repeal section 5 [Rev. Stat. 1858, c. 35], than by the one adopted? It is amended so as to read and be to the effect therein prescribed, and quite different from what it was as it formerly existed.  * * The legislature in effect says that such provision of law shall be read and construed to be as therein declared, and shall have no other meaning or effect given to it." The same court, in *Goodno* v. *City of Oskosh*, 31 Wis. 127, 129, in further exposition of the rule as laid down in *State* v. *Ingersoll*, and applying it to the case in hand, say: "This court decided that where a statute provides that a certain section of a former statute shall be 'amended so as to read as follows,' etc., any provision of such section not found in the new statute is repealed. It follows very clearly from that decision that, whatever pro-

vision of the former statute was in force after the amendment of 1868, it was so in force because of being found in the amended act, and that, if all or substantially all of the former section continued to be the law, it was merely by reason of its having been copied into and reënacted with the amendment.  The original section, as an independent and distinct statutory enactment, ceased to have any existence the very moment the amendatory act was passed and went into effect, and whatever provisions of it remained as law were such solely by virtue of being again enacted in the amendment.  The original section, as a separate statute, was as effectually repealed and obliterated from the statute book as if the repeal had been by direct and express words, and none of its provisions had been reënacted."  This statement of the law is well substantiated and is unquestionably sound.  See, further, *Denver & R. G. Ry. Co.* v. *Crawford,* 11 Colo. 598 (19 Pac. 673); *People* v. *McNulty,* 93 Cal. 427 (29 Pac. 61); *State* v. *Andrews,* 20 Tex. 230.

Applying the rule to the present exigency, all the sections of the old law relative to the assessment and collection of taxes set out in the amendatory act, as amended to be in force and effect from and after January 1, 1904, will be wholly obliterated and superseded by the new sections as contained in the amendatory act, which latter will become solely operative and effective from and after that date.  The logical consequence is that the county court or the board of county commissioners will be left without power or authority to estimate the amount of money to be raised for county purposes, or to apportion the same with the state and school taxes according to the valuation of the taxable property in the county, or to levy a tax thereon for the purpose of raising revenue at its term in January. So with the Governor, Secretary of State, and State Treasurer.  They cannot act in apportioning the revenues for

the state among the counties until July. Whatever act shall be or shall have been regularly done under the old law up to the time of the taking effect of the amendatory act must stand as perfectly valid and effectual; but no act can be performed thereafter under the sections of the old law falling within the purview of the amendments, simply because it will not then exist or be at all operative, having been wholly obliterated and displaced by such amendments. Such is the necessary and inevitable effect of the legislation, adopted, no doubt, in its present form, through casual oversight; and although it may operate unfortunately, in leaving the state and its subordinate political subdivisions without adequate revenues for the current year, the courts are powerless to remedy the evil. They cannot legislate, but must construe the law and determine its effect as they find it, and beyond that they cannot assume to act. This is decisive of the controversy.

It has been suggested, however, that the case of *Smith* v. *Kelly*, 24 Or. 464 (33 Pac. 642), and other authorities announcing a like principle, might afford a solution of the problem favorable to the appellants. But it is not to the purpose. In that case there was a repeal of the mortgage tax law, together with the remedy especially provided for the collection of taxes levied on mortgages; and it was held that the repeal, not being of a special tax law, but in the nature of a revision of the general taxing system, did not affect taxes theretofore levied against property of that species, and that, a remedy still remaining under the general provisions for the collection of revenue, the payment of taxes so levied was susceptible of enforcement thereby; therefore that the taxes assessed and levied against mortgages did not fail because of the want of a remedy to enforce their collection. The case at bar is not of that character. Here there will be a valid assessment of property prior to the taking effect of the amendments, but no levy

of any tax thereon, and there will exist no power or authority, under the new law or elsewhere, to make any levy prior to the September term of the county court or board of commissioners, nor will any tax become due or payable until later, and no remedy will remain or exist to be applied for its collection until after that; and there is absolutely no room for an interpretation giving the amendments prospective application and force as to assessments already completed by the assessors. The tax system is revised, it is true, but the power of levying the tax at the time appointed under the old law, together with the remedy, is entirely swept away, so that we must look to the amendments for whatever of vitality there may be in the law. It follows from from these conclusions that Multnomah county and its officers must be enjoined from proceeding under the provisions of the old law as comprehended by the amended sections from and after January 1, 1904, and a decree will be here entered accordingly.

AFFIRMED.