STATE EX REL. BOURQUIN, APPELLANT, *v.* STATE BOARD OF EQUALIZATION ET AL., RESPONDENTS.

(No. 5,152.)

(Submitted April 26, 1923. Decided May 21, 1923.)

[215 Pac. 667.]

*Taxation—Net Proceeds of Mines—State Board of Equalization—Illegal Deductions from Gross Proceeds—Mandamus.*

Taxation—Assessment Under Repealed Statute Void.
    1. The enactment of an entirely new tax law renders illegal any proceedings thereafter taken under the former and repealed statutes.

Same—Assessment by Improper Officer Void.
    2. The foundation of all property taxes is the assessment, and unless the assessment is made by the proper officer it is void.

*Mandamus*—Officers—Want of Authority of Law to Perform Act Complete Defense.
    3. Want of authority of law in an officer to do an act which it is sought by *mandamus* to compel him to do is a complete defense to the application for the writ.

Taxation — Proceeds of Mines — Assessment Under Repealed Statutes Void—*Mandamus.*
    4. *Held,* under the above rules, that by the enactment of Chapter 237, Laws 1921, making net proceeds of mines assessable by the state

board of equalization and repealing sections 2563–2571, Revised Codes of 1907, under which the duty of assessing such proceeds had been placed upon the county taxing officers, a county assessor was without authority after the approval of Chapter 237 to assess net mine proceeds, and *mandamus* did not lie to compel him to obey an order of the county board of equalization that he do so.

Same—Proceeds of Mines—Assessment by State Board of Equalization—Illegal Deductions—*Mandamus.*

5.   The state board of equalization is a special tribunal with limited powers and must, in making an assessment of net proceeds of mines, pursue the method of procedure prescribed by Chapter 237, Laws of 1921 (secs. 2088–2096, Rev. Codes 1921); in it is lodged no discretion to permit deductions from the gross proceeds other than those specifically provided for, or to allow reimbursement to the taxpayer for taxes paid by him by mistake in previous years, and *mandamus* lies to compel the board to follow the law.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

MANDAMUS on the relation of George Bourquin, as county attorney of Silver Bow County and as a taxpayer, to require the state board of equalization, Wellington D. Rankin, Attorney General, and others, and Peter J. Kelly, as Assessor of Silver Bow County, to assess net proceeds of mines of the Butte & Superior Mining Company. From a judgment of dismissal the relator appeals. Affirmed as to the county assessor and reversed as to the state board of equalization.

*Mr. Ed. Fitzpatrick* and *Mr. H. A. Tyvand,* for Appellant, submitted a brief; *Mr. George Bourquin,* appearing *pro se,* argued the cause orally.

The county board acted according to law and its action in directing the assessor to place upon the tax-rolls the net proceeds involved is supported by the following authorities: *Farmers & Merchants' Bank of Los Angeles* v. *Board of Equalization of Los Angeles,* 97 Cal. 318, 32 Pac. 312; *Savings & Loan Soc.* v. *City and County of San Francisco,* 146 Cal. 673, 80 Pac. 1086; *Cosier* v. *McMillan,* 22 Mont. 484,

5.   Writ of *mandamus* and availability as remedy, see note in 89 Am. Dec. 728.

56 Pac. 965; 26 R. C. L., sec. 308, p. 351; 37 Cyc. 1090; Cooley on Taxation, 3d ed., pp. 772–788.

Justice Sheppard, in the case of *Jackson Lumber Co.* v. *Mc-Crimmon,* 164 Fed. 759, which was one on the question of property having escaped assessment, said: "It would seem that the authority for back assessments for the years 1905–6, objected to, was full and explicit, and that the power of the legislature to subject property which has escaped taxation is too well settled to require more than the citation of cases." (See, also, *Hill* v. *County of Lewis and Clark,* 54 Mont. 479, 171 Pac. 929; *City of San Luis Obispo* v. *Pettit,* 87 Cal. 499, 25 Pac. 694; *Sturges* v. *Carter,* 114 U. S. 511, 29 L. Ed. 240, 5 Sup. Ct. Rep. 1014 [see, also, Rose's U. S. Notes]; *Security Trust & Safety Vault Co.* v. *City of Lexington,* 203 U. S. 323, 51 L. Ed. 204, 27 Sup. Ct. Rep. 87 [see, also, Rose's U. S. Notes]; *Co-operative Building & Loan Assn.* v. *State ex rel. Daniels,* 156 Ind. 463, 60 N. E. 146; *Sears* v. *Town of Nahant,* 215 Mass. 329, 102 N. E. 494; Cooley on Taxation, 3d ed., pp. 607–610; 37 Cyc., pp. 1017, 1918, 1020; 4 Dillon on Municipal Corporations, 5th ed., sec. 1400, p. 2400.)

The state board should have made the assessment. Authority in support of such action and on all-fours with the case at bar is the case of *People ex rel. Jones* v. *Webb,* 256 Ill. 364, 100 N. E. 224; see, also, *People* v. *Shirk,* 252 Ill. 95, 96 N. E. 841. The board must act according to law in such matters and this court so held in *State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697; 37 Cyc. 1111, 1112.

In respondents' motions to quash they say: "*Mandamus* is not the proper remedy." Officers or boards charged with the duty of assessing property can be compelled to act by a writ of *mandamus* when they fail or refuse to do their duty as required by law. (*State* v. *State Board of Equalization, supra; State ex rel. Woodward* v. *Moulton,* 57 Mont. 414, 189 Pac. 59; *People ex rel. Edgar* v. *National Box Co.,* 248 Ill. 141, 93 N. E. 778; *People ex rel. Jones* v. *Webb, supra;*

Cooley on Taxation, 3d ed., pp. 1358, 1359; 26 Cyc. 320; 37 Cyc. 986, 1131.)

*Mr. Wellington D. Rankin* and *Messrs. Kremer, Sanders & Kremer,* for Respondents, submitted a brief; *Mr. J. Bruce Kremer* argued the cause orally.

*Mandamus* did not lie. It is well established that where a *quasi*-judicial tribunal such as the state board of equalization possessing jurisdiction and exercising discretionary power has proceeded thereunder, in the absence of fraud its final determination is conclusive and *mandamus* will not lie to correct it unless it affirmatively appears to have been void rather than merely erroneous. (*Woodbury County* v. *Talley,* 147 Iowa, 498, 123 N. W. 746; *State ex rel. Morganthaler* v. *Crites,* 48 Ohio St. 460, 28 N. E. 178; *Judges* v. *People,* 18 Wend. (N. Y.) 79; *Cariaga* v. *Dryden,* 29 Cal. 307; *Ex parte Whitney,* 13 Pet. (U. S.) 404, 10 L. Ed. 221 [see, also, Rose's U. S. Notes]; *Stout* v. *Hopping,* 17 N. J. L. 471; *Foster* v. *Redfield,* 50 Vt. 285; *Ex parte Koon,* 1 Denio (N. Y.), 644; *Martin* v. *Mott,* 12 Wheat. (U. S.), 29, 6 L. Ed. 537 [see, also, Rose's U. S. Notes]; *United States* v. *Sing Tuck,* 194 U. S. 161, 48 L. Ed. 917, 24 Sup. Ct. Rep. 621; *United States* v. *Ju Toy,* 198 U. S. 253, 49 L. Ed. 1040, 25 Sup. Ct. Rep. 644.)

In the ultimate analysis of the contention of appellant, the ores in question are liable to a net proceeds tax collectible from the Butte and Superior Mining Company, although these same ores are admittedly liable to the same tax to be collectible from the owners of the Elm Orlu mine. Such a theory must inevitably lead to that character of double taxation which would be illegal under our law. When appellant argues that these ores are liable to a net proceeds of mines tax and that such tax is collectible from the Butte and Superior Mining Company, and of necessity admits that this same valuation is taxable to the Elm Orlu owners, who, being the conceded owners of these ores, are under our laws liable to a like tax thereon, he countenances that character of double

taxation which is declared to be illegal. (*People* v. *Badlam*, 57 Cal. 594.) "'Double taxation' within the policy of the law which prohibits double taxation means taxation of the same piece of property twice to the same person, or taxing the same piece of property once to one person and again to another." (*Cook* v. *City of Burlington*, 59 Iowa, 251, 44 Am. Rep. 679, 13 N. W. 113; *Judy* v. *Beckwith*, 137 Iowa, 34, 114 N. W. 565; *Bradley* v. *Bowder*, 36 Ohio St. 28, 38 Am. Rep. 547; *Livingston* v. *City of Paducah*, 80 Ky. 656; 1 Cooley on Taxation, 3d ed., 394, 398.)

MR. JUSTICE STARK delivered the opinion of the court.

This is an application for a writ of *mandamus*. On February 21, 1922, George Bourquin, as county attorney and a taxpayer of Silver Bow county, filed in the district court his affidavit setting forth that the Butte & Superior Mining Company, a corporation (hereinafter referred to as the company), was at all the times therein mentioned the sole owner of and operating the Black Rock mine in Silver Bow county; that on July 9, 1920, the company made and delivered to the assessor of said county the written and verified statement required by sections 2563, 2564 and 2565, Revised Codes of 1907, showing the gross yield of ores of said Black Rock mine for the year next preceding June 1, 1920, to have been of the value of $6,787,783.48, and likewise showing that the actual expenditures during that year for necessary labor, machinery and supplies needed and used in its mining operations, for improvements necessary in and about the working of said mine, for reducing the ores, transporting the same, and extracting the metals therefrom, and for the construction of mills and reduction works used and operated in connection with the mine (being all the deductions specified in the above sections of the Code), amounted to $5,601,537.68, which made the net proceeds of the operations for said year amount to $1,186,245.85, but that the company at the time of filing the statement wrongfully, unlawfully and without authority of law

placed in said statement an item of expenditure and deduction
of $2,719,379.73, which was charged off as "cost of ore pur-
chased," thereby showing a deficit of $1,533,133.93, while in
truth and fact it had purchased no ores whatever during that
time; that said deduction was willfully made in order to evade
payment of taxes on the net proceeds of the Black Rock mine
for the preceding year, and thereby the assessor of the county
was deceived so that he did not place on the "assessment-
book of the net proceeds of mines" for the year 1920 the
name of the said company or assess it with or for any net
proceeds of mines for said period; that the county board of
equalization did not have its attention called to these facts
until its meeting in the following year, but that on July 21,
1921, while said board was in session, the same were brought
to its notice, and on that date it notified the company in writ-
ing that on August 3, 1921, it would take up, consider and act
upon the matter of directing the county assessor to assess
such net proceeds; and that at the time designated the com-
pany appeared in response to the notice and furnished addi-
tional information showing that said deduction was the amount
which it had been obliged to pay to the owners of the Elm
Orlu mine for ores which it had extracted therefrom during
a period of time extending from May 31, 1912, to May 31,
1920, through a mistake as to its rights, and that it had
from year to year during said time paid the net proceeds
tax upon all of said ores, and by reason of these facts claimed
to be lawfully entitled to make such deduction; that this
matter was considered by said board of equalization, and such
proceedings were had in connection therewith that on the
eighth day of August, 1921, it made and entered an order
directing the county assessor to enter on the assessment-book
of Silver Bow county for the purpose of taxation as the net
proceeds of the Black Rock mine for the year extending from
June 1, 1919, to June 1, 1920, the sum of $1,186,245.80, but
that said assessor willfully, knowingly and fraudulently at all
times refused so to do; that on August 12, 1921, the company

appealed to the state board of equalization (hereinafter referred to as the state board) from this action of the county board of equalization of Silver Bow county, which appeal was duly perfected and subsequently came on for hearing before the state board, and that body, after hearing statements and arguments of the several parties interested and considering the same, on October 7, 1921, caused the following entry to be made in the minutes of its proceedings: "The appeal of the Butte & Superior was taken up and discussed, after which Mr. Stewart moved the appeal of the Butte & Superior be granted. This motion was seconded by Mr. Porter. Clerk was instructed to call the roll. Voting: Mr. Stewart, Yes. Mr. Porter, Yes. Mr. Rankin, No (until further hearing). Governor Dixon, Yes. Motion carried."

The affidavit then recites that the state board by said action in effect held that the company was not subject to assessment for net proceeds from said Black Rock mine for the year 1920, and that said net proceeds were not subject to taxation at all for said year, which action is alleged to have been taken unlawfully, knowingly and intentionally, contrary to the laws of this state and in total disregard of its duties and powers as a board of equalization in the matter of the taxation of the net proceeds of mines; that said state board acted in bad faith and has refused to reassemble or further consider its action, and by reason thereof the relator and other taxpayers of Silver Bow county have suffered loss and damage by the addition of increased burdens of taxation upon their property, and that the relator has no plain, speedy or adequate remedy in the ordinary course of law.

Upon the filing of this affidavit an alternative writ of mandate was issued, directed to the assessor of Silver Bow county and to the state board commanding the board to reassemble and take further action upon said appeal, to revoke and annul their order theretofore made, and to assess and tax said company for the net proceeds of the Black Rock mine for the period ending June 1, 1920; and commanding the assessor to

immediately place upon the "assessment-book of net proceeds
of mines" of Silver Bow county said net proceeds, or that they
show cause before the court on March 4, 1922, why they had
not done so.

Upon the return day of this alternative writ, the re-
spondent state board appeared and moved to quash, vacate and
set the same aside upon numerous grounds, among them
being that the court was without jurisdiction of the subject
matter; that the affidavit upon which the same was issued did
not state facts sufficient to constitute a cause of action or
to entitle the relator to any relief; and that *mandamus* was
not the proper remedy. A similar motion was made on be-
half of the respondent county assessor. After a hearing the
motions were sustained, and thereupon, on May 5, 1922, a
judgment was entered to that effect, which also contained the
following: "It is further ordered, adjudged and decreed that
the said action be and is hereby dismissed and that judg-
ment be entered in favor of the defendants upon the merits."
From this judgment the relator has appealed.

In the proceedings before the state board and in this court,
the subject matter of this controversy was and has been
treated by counsel as though the powers of that board were
regularly and duly invoked to exercise whatever statutory
authority is lodged therein concerning the computation of the
net proceeds of mines and taking the steps essential to their
entry upon the assessment-book for the purpose of taxation;
and, also, that the intent and effect of the order made by the
state board on October 7, 1921, was to reverse the order of the
board of equalization of Silver Bow county refusing to allow
the deduction claimed by the Butte & Superior Mining Com-
pany, and to hold that such deduction was lawful and should
be made. Under these conditions, we feel impelled to adopt
the theory upon which counsel have proceeded, and to thus re-
gard the effect of that order.

1. Under the provisions of sections 2563 to 2571, inclusive,
[1-4] Revised Codes of 1907, it was the duty of every cor-

poration engaged in mining, between the first and tenth days of June in each year, to make a verified statement showing the gross yield of metals or minerals from each mine owned by it for the year preceding the first day of June, together with the value thereof, from which valuation certain deductions specifically mentioned were to be made so as to show the value of the net proceeds of such mines during that period of time. This statement was required to be filed with the county assessor of the county in which the mines were situated. It then became the duty of that officer to enter in a special assessment-book the information contained in this verified report, and the net proceeds thus disclosed formed the basis of assessment for taxation purposes for the current year.

By Chapter 237, Session Laws of 1921, approved March 8, 1921, the above-mentioned sections 2563 to 2571 were expressly repealed, and in lieu thereof a new method of assessing the net proceeds of mines was provided; the same being now embraced in sections 2088 to 2096, Revised Codes of 1921. The provisions of the new Act are somewhat similar to the provisions of the sections contained in the Revised Codes of 1907, but differ therefrom, so far as it is now necessary to note the differences, in that they provide that the statement showing the gross proceeds of the mine, with the deductions therefrom, necessary to ascertain the net proceeds, shall be filed with the state board of equalization, which board is authorized to compute from such statement the amount of the net proceeds and is required on or before the first day of August in each year to certify to the county clerk of the county in which the mines and mining claims are situated the valuation of the net proceeds as they have been fixed and determined by it, and thereupon the county clerk is required to enter the information certified by the state board of equalization in a book designated "Assessment Roll Net Proceeds of Mines," and this constitutes the assessment for the current year.

If taxable at all, the net proceeds involved in this case should have been assessed in the year 1920. The fact that

they had escaped taxation was not discovered until the following year, and on August 8, 1921, the county board of equalization directed the assessor to place the same upon the assessment-book.

The enactment of an entirely new tax law renders illegal any proceedings thereafter taken under the former and repealed statutes. (*State ex rel. Baker* v. *Scudder*, 32 N. J. L. 203; *Flanders* v. *Multnomah County*, 43 Or. 583, 73 Pac. 1042; *Heilig* v. *City Council*, 7 Wash. 29, 34 Pac. 164.) Sections 2563 to 2571, Revised Codes of 1907, *supra*, ceased to exist on March 8, 1921, when the new Act became effective, and thereby the power and authority of the county board of equalization of Silver Bow county to direct the county assessor of that county to make an assessment upon the net proceeds of mines terminated, because subsequent to that time the power to assess net proceeds was expressly lodged in the state board under the new Act.

The foundation of all property taxes is the assessment (Cooley on Taxation, 3d ed., 597), and the assessment must be made by the proper officer or it will be void (*Id.* 600). Hence the assessor had no authority to assess these net proceeds at the time he was directed to do so by the board of equalization, and its attempted order for him to do so was of no binding force upon him. "It is a complete answer to an application for a writ of *mandamus*, in any case, that the respondent has no authority of law to do the act which the applicant would have him perform." (Cooley on Taxation, 3d ed., 1350.) Therefore the court did not err in sustaining the motion of the respondent county assessor to quash the alternative writ as to him.

2. The most serious matter arising on this appeal presents [5] itself when we come to a consideration of the action of the state board. As above shown, since March 8, 1921, that board has been invested with the sole power and authority to make an assessment of the net proceeds of mines. The mine owner is required to file his annual statement with that

board, and it computes therefrom the value of the net proceeds for taxation purposes, certifies this result to the county clerk of the county where the mine is located, and this officer then performs the mere clerical duty of copying into the assessment-book the result of the board's determination. That is to say, so far as the assessment of the net proceeds of mines is concerned, that board has become the assessor, and to this extent the county assessor has ceased to function. The precise method to be followed by the assessor in arriving at the value of such net proceeds for taxation purposes was indicated by sections 2563–2571, Revised Codes of 1907, *supra;* and the method to be pursued by the state board under the new Act is specifically pointed out in sections 2088–2096, Revised Codes of 1921, *supra.* Under each of these Acts the assessing officer or board is directed to deduct certain specified items from the gross value of the ores produced, as shown by the verified statement furnished, and the difference represents the value of the taxable net proceeds. "Costs of ores purchased" is not an item of deduction specified to be made under any of the above provisions.

In *State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, this court held that so far as the method of procedure of the state board in making an assessment is prescribed by the statute, it is mandatory and must be strictly followed. The accuracy of all the items contained in the company's statement which was before the state board was not questioned by any person, so far as disclosed in the minutes of its proceedings set forth in relator's affidavit. To determine the amount of the net proceeds required but a simple mathematical computation, which, indeed, had been already made before the matter reached the state board. The facts did not call for the exercise of any discretion whatever by that body. Whether the deduction claimed should or should not be made was only a question of law. In allowing the questioned deduction to be made, the state board failed to follow the law and adopted fundamentally wrong rule in arriving at its conclusion. Under

such circumstances, the assessing officer or board may be compelled by *mandamus* to follow the law. (*State* v. *State Board of Equalization, supra:* Cooley on Taxation, 3d ed., 1356–1359.)

Counsel for the respondent board strenuously urge that under the circumstances set forth in relator's affidavit it was lawful for the company to make the deduction of $2,719,379.93 for ores purchased, in addition to the deductions specifically allowed by the statute. Briefly summarized, their argument is that between May 31, 1912, and May 31, 1920, the Butte & Superior Company in the operation of the Black Rock mine had taken ores from the Elm Orlu mine through a mistaken belief that they were ores of the Black Rock mine and had from year to year during all that time voluntarily paid a net proceeds tax upon such ores, but that as to the result of a judgment entered in litigation between the owners of the Elm Orlu and the company, it had been finally determined that these ores in fact belonged to the Elm Orlu mine, and the company was obliged to pay for them the amount claimed as the deduction; that if the deduction is not allowed it would result in an injustice to and unlawful discrimination against the company and amount to a double taxation of the net proceeds of its mine and permit the real owners of the Elm Orlu ore to entirely escape payment of taxes thereon.

Counsel also contend that the provisions of section 15, Article XII, of the Constitution, giving the state board power to "do all things necessary to secure a fair, just and equitable valuation of taxable property among the counties and between the different classes of property and individuals," which is incorporated in section 2123, Revised Codes of 1921, is sufficient authority for the board to allow such a deduction as the one claimed.

The intent and purpose of these provisions is to confer upon the state board authority to establish uniformity and equality in the assessment and valuation of property for taxation purposes and to prevent discrimination in such assessments. In *State* v. *State Board of Equalization,* 56 Mont., at page 460,

186 Pac., at page 701, this court pointed out that "The state board of equalization is a special tribunal * * * with limited powers and charged with the performance of specific duties." This board is not given power or authority, by direction or indirection, to reimburse a person for taxes which he has paid by mistake in former years, and that would be the direct effect of allowing this deduction to be made; it would suffer the company to get back from the county *pro tanto* the amount of taxes which it had mistakenly paid. In other words, it would, in effect, permit the company to say that it owed the county taxes on property valued at $1,186,245.85 for the year 1920, but since during the past nine years it had mistakenly paid taxes on $2,719,379.93 worth of property it did not own, and which should have been paid by others, therefore to partly reimburse itself it would retain the amount of taxes which were due from it for the year 1920. The law will not permit a taxpayer to correct his mistakes in this way.

As we view the facts recited in the affidavit, the question of who shall or shall not pay taxes on the net proceeds of the ores taken from the Elm Orlu mine is not in any way involved in this proceeding.

In the consideration of this case we have assumed that it was competent for the legislature to invest the state board of equalization with authority to make an original assessment of property like that involved. This question was not raised.

For the reasons above indicated, it is ordered that the judgment of dismissal as to the respondent county assessor is affirmed, and that as to the respondent state board of equalization the same is reversed, and the cause remanded to the district court, with directions to overrule the motion to quash.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.