**ATCHISON, T. & S. F. RY. CO. v. ELEPHANT BUTTE IRR. DIST. OF NEW MEXICO.**

No. 1932.

Circuit Court of Appeals, Tenth Circuit.

March 20, 1940.

W. C. Reid, of Albuquerque, N. M., (E. C. Iden, of Albuquerque, N. M., and Holt & Holt, of Las Cruces, N. M., on the brief), for appellant.

Edwin Mechem, of Las Cruces, N. M., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The Elephant Butte Irrigation District[1] was organized in 1917 under ch. 60, N.M. St.Ann. 1915, as amended by ch. 100, N.M. S.L. 1915 and ch. 21, N.M.S.L. 1917. Within the exterior boundaries of the District at the time of its organization there were approximately 111,000 acres of land. Much of it was neither irrigable nor cultivable.

On June 15, 1918, the District entered into a contract with the United States under the provisions of the Act of Congress approved June 17, 1902, 32 Stat. 388, and acts amendatory thereof and supplemental thereto. Under the contract, the United States agreed to expend certain specified sums for the construction of drainage works for the lands of the District and for "the modification and extension of the system for the distribution and delivery of water for the irrigation of the irrigable lands of the District" and to operate and maintain the project.

The contract provided that for reimbursing the United States for any work done on the lateral system, the District might collect either from the lands of the District

---

[1] Hereinafter referred to as the District.

as a whole, or, in the discretion of the board of directors of the District,[2] from the unit of the project for the benefit of which such works had been constructed.

Article 6 of the contract, in part, provided that the United States would operate and maintain the system and divert and distribute the water for the irrigation of the District lands at an annual rental charge equal to the cost of operation and maintenance, plus 10 per cent; that the District would pay an aggregate annual storage charge equal to 50 cents per acre for the total area within the District actually irrigated until the time specified by the Secretary of the Interior,[3] pursuant to article 7 of the contract, for the beginning of the payment of construction charges, and that thereafter the rental charges should apply only to lands not designated by the Secretary as subject to construction charges.

Article 7, in part, provided that when the Secretary should determine a specified area of irrigable lands should commence the payment of construction charges, he should render a statement to the District designating the area and the amount of construction charges payable therefor.

Article 11, in part, provided that after rendering any such statement, the Secretary would announce the rates for operation and maintenance due from the District for the lands designated and the District would pay the United States the amount due therefor.

Article 13, in part, provided that the Secretary, should he deem lands temporarily incapable of successful cultivation on account of "seepage, alkaline or other conditions," might notify the District that such lands would be relieved from the amounts payable on account thereof for a specified period or until further notice and, thereupon, the District should exempt such lands from assessment or levy during the period determined by the Secretary and that the Secretary, should he deem any lands of the project permanently insusceptible of reclamation on account of seepage or other conditions, might contract with the District for the severance of the water rights from such lands.

Since the organization of the District, the Atchison, Topeka and Santa Fe Railway Company[4] has been the owner of certain lands lying within the exterior boundaries of the District, which lands the Railway Company has used exclusively for right of way purposes. The Secretary has never determined that the lands of the Railway Company were subject to construction charges pursuant to article 7 of the contract nor designated such lands as subject to operation and maintenance charges. The Board, at its annual meetings held in the years 1919 to 1931, inclusive, did not determine the lands of the Railway Company to be, nor designate them as subject to assessments and levies for such years as provided by § 21, ch. 20, N.M.S.L. 1919, and by § 3, ch. 39, N.M. S.L. 1921, nor otherwise attempt to subject such lands to taxation during those years.

From 1925 to 1931, inclusive, all lands within the exterior boundaries of the District, except the lands of the Railway Company, were assessed for current and miscellaneous expenses.

Since 1925 it has been the practice of the United States Reclamation Service annually to classify the lands in the District subject to construction, operation and maintenance charges, and to furnish to the District a list of such lands setting forth the names of the owners, a description of each owner's land and the portion thereof subject to such charges and the portion thereof exempted therefrom. In making up such classification, the Reclamation Bureau has uniformly classified lands which could not be benefited by irrigation as suspended lands exempt from charges for construction, operation and maintenance.

The Secretary has never included the lands of the Railway Company in such lists and classification.

Except as to the lands of the Railway Company, it has been the practice of the Board to accept the classification made by the Reclamation Bureau in the absence of claims that particular lands classified for taxation should be exempted. When claims for exemption were made, they were investigated and if allowed, the classification was modified accordingly.

In 1931, O. C. Payne, an assistant engineer of the Reclamation Service, acting pursuant to directions of the Board, made a survey, map and classification of the ir-

---

[2] Hereinafter referred to as the Board.
[3] Hereinafter referred to as the Secretary.

[4] Hereinafter referred to as the Railway Company.

rigable lands of the Railway Company within the District.

In 1932, the assessor-collector of the District undertook to assess the lands of the Railway Company for current and miscellaneous expenses and operation, maintenance and construction charges for the years 1919 to 1932, inclusive. He set up such lands on the tax rolls on the basis of the Payne survey and classification and extended the levies for such years, respectively, against such lands.

At its annual meetings in the years 1932 to 1936, inclusive, the Board caused the lands of the Railway Company to be listed on the tax rolls on the basis of the Payne survey and the levies for such years, respectively, to be extended against such lands.

The Railway Company did not appear before the Board at its stated annual meetings in the years 1932 to 1936, inclusive, and show cause why its lands should be exempted from taxation.

The lands of the Railway Company, because of the railway use, fills, ditches, and soil conditions during the years 1919 to 1936, inclusive, were incapable of cultivation and were not and could not be irrigated.

The District brought this action against the Railway Company to recover the taxes levied for the years 1919 to 1936, inclusive. From a judgment in favor of the District, the Railway Company has appealed.

Sec. 19, ch. 109, and § 19, ch. 140, N.M. S.L. 1909, carried into ch. 60, N.M.St.Ann. 1915, as § 2968, provided that the assessor of any county embracing the whole or a part of an irrigation district should assess and enter upon his tax roll annually the names of the owners, description and area of each tract of land in the district in his county, subject to taxation, and deliver certified lists thereof to the county commissioners of his county and to the county commissioners of the county wherein the office of the district was then located. The section contained the following proviso: "Provided, That in no case shall any land be taxed for any purpose under this chapter, which from any natural cause cannot be irrigated by the irrigation system of said district, or is incapable of cultivation." Ch. 140, N.M.S.L. 1909, and ch. 60, N.M. St.Ann. 1915, were amended by ch. 100, N.M.S.L. 1915, and ch. 21, N.M.S.L. 1917, to provide for cooperation between irrigation districts and the United States Government under the terms of the Reclamation Law and acts amendatory thereof and supplemental thereto. Sec. 2968, supra, was neither repealed nor amended by ch. 100, or ch. 21, supra.

Sec. 2, ch. 21, supra, provides for the filing of a petition with the board of commissioners of the county embracing the largest acreage of the proposed district praying that such board of county commissioners define and establish the boundaries of the proposed district. Sec. 4, ch. 21, supra, provides that when the petition is presented and it appears that the prerequisites of the statute have been met the board of county commissioners shall proceed to define the boundaries of the proposed district from the petition and from such application for the exclusion of lands therefrom and the inclusion of lands therein as may be made in accordance with the statute, and further provides "nor shall any land which will not in the judgment of the board be benefited by such proposed water system be included in such district if the owner * * * thereof shall make application at such hearing to withdraw the same."

The Railway Company made no application for the withdrawal of its lands pursuant to the above provision.

Sec. 2968, supra, was amended by § 22, ch. 20, N.M.S.L. 1919, and § 4, ch. 39, N.M. S.L. 1921. As finally amended, it provides that the county assessor of any district embracing the whole or any part of an irrigation district shall enter upon his tax roll annually the name of the owner, description and area of each tract of land in the district in his county, subject to taxation under the act, and deliver certified lists thereof to the county commissioners of his county and the secretary of the irrigation district on or before July first of each year; that if the board of directors has exempted any lands from taxation, in whole or in part, or if the Secretary has taken similar action pursuant to contract with the district, the secretary of the district shall note such exemptions for each tract upon the certified list so furnished, and that such list, together with the items showing the amount of funds required by the district for the ensuing year, shall be delivered to the county commissioners of the county in which the office of the district is located.

Sec. 2967, N.M.St.Ann. 1915, provided that the board of directors on or before

September first of each year should determine the amount of funds required for district purposes for the ensuing year and certify the same to the county commissioners of the county in which the office of the district was then located. It was amended by § 14, ch. 21, N.M.S.L. 1917, and § 21, ch. 20, N.M.S.L. 1919, and § 3, ch. 39, N.M.S.L. 1921. As finally amended, it provides that the board of directors on a date to be fixed by its standing order, which shall be not later than July first of each year, shall estimate and determine the amount of funds required by the district for the ensuing year, as follows:

"Item One. * * *[5]

"Item Two. Any payment to become due under any contract with the United States, * * * whether for the cost of irrigation or drainage system or for the operation and maintenance thereof, or both; or if the lands of the district have been divided by the Secretary of the Interior into units, * * * for repayment purposes, the board shall prepare separate estimates for each such unit;

"Item Three. The portion of the expenses of operation and maintenance of the irrigation and drainage systems to be collected by tax assessment and levy, * * * and the said portion of said operation and maintenance expenses so collected by tax assessment and levy, shall be collected from all lands of the district, whether irrigated or not except such lands as may be exempted from taxation by the terms of this Act, and the same, when collected, shall be applied *to the cost of operating and maintaining of the irrigation and drainage systems.* The remainder of said estimated amount shall be paid by the parties actually using said systems and water for irrigation or other purposes, in accordance with the terms of their contract for water;

"Item Four. Current and miscellaneous expenses, * * *."

It further provides that land which, in the opinion of the board of directors, is unfit for cultivation by irrigation "on account of seepage, alkali or physical condition and location of the land, or other conditions," or lands to which water cannot be delivered at points which the board of directors considers reasonable shall not be taxed for Item Three, and that lands shall not be taxed for Items One and Two for the periods and to the extent that on account of seepage or other conditions such lands, in the opinion of the board of directors or the Secretary, are not fit for cultivation by irrigation, and that proper entry shall be made by the district officers of all exemptions made.

It further provides that the board of directors at such stated meeting "shall consider, determine, and designate the lands" within the district "which shall be subjected to the assessments and levies" referred to above. It further provides that notice by publication shall be given of the time, place, and purpose of such meeting informing all persons interested that at the time and place specified an opportunity will be afforded them to appear before the board of directors and show cause why any particular tract of land or any portion thereof should be exempted from taxation under the provisions of the act.

It further provides that at such meeting the board of directors shall afford to all persons, desiring so to do, an opportunity to show why any given tract of land or a portion thereof should be exempted from taxation; that the board of directors at such meeting shall investigate and determine each claim for exemption and give notice of its decision to the claimant by registered mail. It further provides for an appeal by any person aggrieved by such decision to the district court of the county wherein the decision is rendered.

■■ The evidence with respect to the giving of notice of the time, place, and purpose of the meeting by publication as required by § 3, ch. 39, supra, is meager, it being merely to the effect that public notice was given. But the Board was charged with the duty of giving such notice, and since there was no evidence to the contrary, we must presume that the notice was given in conformity with the statutory requirements. There is a presumption that public officers have properly discharged the duties of their office.[6]

Sec. 2969, N.M.St.Ann. 1915, as amended by § 7, ch. 100, N.M.S.L. 1915, § 15, ch. 21, N.M.S.L. 1917, and § 23, ch. 20, N.M.S.L. 1919, provides that the county

---

[5] Refers to provision for principal and interest on bonds and is not here material, the District having no outstanding bond issue.

[6] Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 96 F.2d 518, 521; O'Donnell v. Cullen, 10 Cir., 76 F.2d 955, 957; Fidelity & Casualty Co. of New York v. Brightman, 8 Cir., 53 F.2d 161, 166; 20 Am.Jur. p. 174, § 170.

commissioners of the county in which the office of the district is located, upon receipt of the certificate of the board of directors certifying the amounts to be raised for the requirements of the district and upon receipt of the assessor's certified list of the tracts of land in the district upon which the secretary of the district has entered the notations of exemptions, shall fix the respective rates of levy per acre necessary to provide the amounts of money required as specified in the certificate and if there be any other county or counties wherein are situate lands within the district, said county commissioners shall certify to the county commissioners of such other county or counties such levies and lists of lands subject to taxation therein, and that the boards of county commissioners of such other counties shall furnish to the respective county assessors thereof such levies and lists of lands, and that the county assessors shall thereupon cause an extension to be made upon their assessment rolls of the amount due from each tract of land.

Ch. 129, N.M.S.L. 1927, provides that whenever any board of directors of any irrigation district, organized for the purpose of cooperating with the government of the United States under the Federal Reclamation Law, shall decide by appropriate resolution that it is to the best interest of such district to assess, levy, and collect the taxes of such district, it may take over such duties; that the board of directors of any such district, after deciding to take over such duties, shall appoint an assessor-collector and treasurer of such district, and on or before the first day of September of each year, shall determine the amount of money required to meet the obligations, maintenance, operating and current expenses for the ensuing year, and fix the rate per acre of levy necessary to provide such amount of money, and certify the same to the assessor-collector of the district. Sec. 8, ch. 129, supra, read as follows:

"The Assessor-Collector, on or before the first day of November of each year, shall prepare the assessment roll of the district, upon the blanks to be furnished by the Board of Directors, by entering upon said roll the name of the owner, the description and area of each tract of land in said district subject to taxation under the irrigation district laws of this state, and shall extend upon said assessment roll the amounts due from each tract of land for each fund certified to him by the Board of Directors in a separate column and also the total taxes so levied for all the purposes of said irrigation district and the total amount due from each tract of land for all purposes in said irrigation district. In the event said district is composed of land lying in different counties, the Assessor-Collector shall make a separate assessment roll for each county. Said assessment roll shall be kept at the office of the district and the taxes shall be payable at the office of the district."

Ch. 129, supra, was amended by § 1, ch. 14, N.M.S.L. 1933, to provide that "a description of the tracts on the assessment rolls according to the plat numbers on the maps of the District, prepared by the United States Bureau of Reclamation, shall be a sufficient description."

The Railway Company contends that its lands are exempt from taxation under the proviso above set forth in § 2968, supra. The District contends that the action of the county commissioners in fixing the boundaries of the District, pursuant to § 4, ch. 21, supra, was a conclusive determination that the lands of the Railway Company would be benefited by the irrigation project and that they are, therefore, subject to taxation for irrigation district purposes. In support of this contention, the District relies upon Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 170, 175, 17 S.Ct. 56, 41 L.Ed. 369; Oregon Short Line R. Co. v. Pioneer Irrigation Dist., 16 Idaho 578, 102 P. 904, 907; and Davy v. McNeill, 31 N.M. 7, 240 P. 482.

We may assume, without deciding, that the order of the county commissioners defining and establishing the boundaries of the District was a conclusive determination that all land within the District would be benefited by the irrigation system. However, we do not think such determination precludes the exemption from taxation of land within the District in accordance with the statutory provisions therefor. Sec. 2968, supra, expressly provides that in no case shall any land be taxed for any purpose under the Irrigation Act which from any natural cause cannot be irrigated by the irrigation system of the district, or is incapable of cultivation. Sec. 14, ch. 21, N.M.S.L. 1917 provides for exemption on account of seepage and other conditions. Sections 21 and 22, ch. 20, N.M.S.L. 1919 provide for exemption from taxation of lands, in whole or in part, by the board of

directors and by the Secretary, pursuant to contract, on account of seepage or other conditions, or the inability to deliver water therefor under the existing system at reasonable points; and §§ 3 and 4, ch. 39, N.M.S.L. 1921 make like provision for exemption of lands from taxation. Thus, it will be seen that the original statute provided for exemption from taxation for irrigation district purposes, of land within the District and that the Legislature has continued to recognize the right to such exemptions, notwithstanding the determination of the board of county commissioners defining the boundaries of the District.

We conclude that the determination of the board of county commissioners defining the boundaries of the District does not preclude the Railway Company from asserting a claim that its lands are exempt from taxation.

I. The purported assessments for the years 1919 to 1931, inclusive.

The Board did not at its annual meetings for such years, or at any other time, in accordance with the provisions of § 21, ch. 20, N.M.S.L. 1919, and § 3, ch. 39, N.M.S.L.1921, consider and determine the lands of the Railway Company to be, and designate them as subject to assessment and levy for district purposes for such years. Nor, were such lands listed for assessment by the county assessor for such years.

■ While the assessor-collector by § 8, ch. 129, and § 1, ch. 14, supra, was charged with the duty of preparing the final assessment roll of the District and extending the levies thereon, the primary duty of considering, determining, and designating the land subject to assessment and levy and passing on claims of exemption was vested in the Board, and the assessor-collector could only extend upon the assessment roll such lands as were determined and designated as subject to assessment and levy by the Board. The Board not having determined and designated the lands of the Railway Company as subject to assessment and levy for the years 1919 to 1931, inclusive, the treasurer-collector was without authority to place them on the tax rolls and to extend the levies thereon for such years.

■ An assessment can be made only by an official or board designated by law to make it. An attempted assessment by any other person or board is void.[7]

■ Furthermore, the Board not having considered the Railway Company lands and not having determined them to be, and designated them as subject to assessment and levy at its annual meetings in the years 1919 to 1931, inclusive, the Railway Company in effect was denied the benefit of its statutory remedy to appear and claim that its lands were exempt from assessment and levy. The lands not having been listed by the assessor of the county in which they were located and not having been designated by the Board as subject to taxation and levy, there was nothing against which the Railway Company could assert a claim for exemption. It had a right to assume, with respect to those years, that the assessor and the Board had recognized its lands were not subject to taxation.

We conclude that the purported assessments for such years were void and that the court erred in awarding judgment on such assessments.

II. The assessments for the years 1932 to 1936, inclusive.

The Board at its annual meetings for such years considered the lands of the Railway Company and determined them to be, and designated them as subject to assessment and levy. The Railway Company wholly failed to pursue its statutory remedy by appearing before the Board and asserting its claim that its lands were exempt from taxation.

■ Where an exemption is statutory and a statutory remedy for establishing the exemption before the taxing authorities, with a right to judicial review, is provided, and the taxpayer fails to avail himself of the statutory remedy, he may not assert the exemption in an independent judicial proceeding or a proceeding to enforce the tax.[8]

---

[7] Cooley Taxation, 4th Ed., Vol. 3, § 1046, p. 2121; Central Illinois Public Service Co. v. Swartz, 284 Ill. 108, 119 N.E. 990, 991; State v. State Board of Equalization, 67 Mont. 340, 215 P. 667, 670; Southern Pac. Co. v. Pima County, 38 Ariz. 11, 296 P. 533, 535; Brewer v. Dunning, 122 Wash. 358, 210 P. 672, 673; Cross v. Georgia Iron & Coal Co., 5 Cir., 250 F. 438, 439.

[8] Jamaica & B. Road Co. v. City of Brooklyn, 123 N.Y. 375, 25 N.E. 476; Baltimore Steam Packet Co. v. Mayor & City Council of Baltimore, 161 Md. 9, 155 A. 158, 161, 162; Hollandale Ice Co. v. Board of Supervisors, 171 Miss.

■ It follows that the Railway Company was not entitled to assert its claim of exemption in this proceeding.

The judgment is reversed and the cause remanded with instructions to enter judgment in favor of the District against the Railway Company for the taxes assessed for the years 1932 to 1936, inclusive.

The costs in this court will be assessed against the District.

515, 157 So. 689, 690; State v. Alabama Educational Foundation, 231 Ala. 11, 163 So. 527, 532; Catholic Society, etc. v. Madison County, 4 Cir., 74 F.2d 848, 849.