## LANDERS *v.* VAN AUKIN.

(151 Pac. 712.)

</div>

**Schools and School Districts—Selection of School Site—Majority Vote.**

1. Under Laws of 1913, page 303, Section 1, subdivision 14, providing that by a majority vote of any legally called school meeting a schoolhouse site may be selected, but that it shall require a two thirds vote to order the removal of a schoolhouse, where the chairman announced as business the selection of a site for a new schoolhouse, two nominations being made, the present site of the school and another, the ballot resulting in a majority vote for the new site, the selection of such site by such vote was proper; a two-thirds vote not being required, as in the case of the removal of a school.

**Injunction—Adequate Remedy at Law.**

2. Where the owner of land sought to be condemned as a school site contended that the majority vote whereby the voters of the district selected such site was not valid, a two-thirds vote being required by statute, she could not maintain her injunction suit against the school board to restrain it from the condemnation, since the defense could be set up in the condemnation proceedings themselves, as one

attempting to acquire the property of another by eminent domain must, as a condition precedent, show authority.

[As to injunction against illegal acts of municipal and other public corporations, see note in 2 Am. St. Rep. 92.]

**Statutes—Remedial Statute—Construction.**

3. A remedial statute should be construed to give it practical effect according to the lawmakers' intention.

**Schools and School Districts—Tax Levy—Authorization—Statute.**

4. Under Laws of 1913, page 300, Section 1, subdivision 5, providing that, if authorized by a majority vote at any school meeting, the district board shall build schoolhouses, etc., and levy a tax, or issue bonds to pay therefor, subdivision 6, providing that the board, when authorized by a majority vote, may, to build a schoolhouse or to buy land for school purposes, issue negotiable warrants evidencing such debt, and levy a tax to pay interest or principal, and, under Section 2, providing that school districts may contract bonded indebtedness to erect a schoolhouse, purchase a site, or to fund outstanding indebtedness, subdivision 4 of the section providing that the board shall levy annually a direct *ad valorem* tax sufficient to pay interest accruing on bonds, where the notice of a special school meeting made no mention that a tax levy would be one of the purposes of the assemblage, but stated that the business would be to vote on the selection of a new schoolhouse site, and upon the question of authorizing the board of directors to borrow money to build a schoolhouse and purchase land for school purposes by negotiating interest-bearing warrants, etc., and where, upon authorization of the meeting, the land was purchased and a tax levied to meet the warrants issued in payment therefor, such tax was not without foundation, because the notice made no express mention that its levy would be one of the purposes of the meeting, since the authorization of the board to incur indebtedness was followed by operation of law by their right to levy a tax to discharge it.

**Taxation—Collection—Restraint.**

5. Plaintiffs, seeking to enjoin the collection of an illegal tax, who do not tender whatever may legally be due, have no standing in equity.

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.     Statement by MR. JUSTICE BURNETT.

This is a suit by Henry Landers for himself and on behalf of sixteen others similarly situated, and Ollie F. Castle against L. M. Van Aukin, T. G. Haven and —— Weber, directors of school district No. 5, and James E. Sawyers, as county treasurer and tax collector of Douglas County, to enjoin said defendants from col-

lecting a tax or creating any indebtedness for the purpose of building a new schoolhouse or condemning land as a site for the same. It appears that the directors of school district No. 5 in Douglas County called a special meeting of the legal voters of that district and caused to be posted a notice of which the following is a copy:

"Notice is hereby given to the legal voters of school district No. 5 of Douglas County, State of Oregon, that a special school meeting of said district will be held at Green's schoolhouse on the 17th day of November, 1913, at 2 o'clock in the afternoon for the following objects: First, for the purpose of electing a school director to serve in the place of John Landers, resigned. Second, to vote upon the question of the selection of a new schoolhouse site. Third, to vote upon the question of authorizing the board of directors of this district in name and upon behalf of said district to contract a debt by borrowing money or otherwise not to exceed 5 per cent of the value of the taxable property of the district for the purpose of building a school building and for the purchase of land for school purposes and issue negotiable interest-bearing warrants and fix the time of payment of the same, of their district, evidencing such debt. Dated this 6th day of November, 1913."

It was signed by the chairman of the board and attested by the clerk. At the meeting thus called the chairman announced as an order of business the selection of a new schoolhouse site. Two nominations were made, the present site being designated as No. 1, and the southwest corner of Green Street and Pacific Highway as No. 2. The ballot resulted in No. 1 receiving 17 votes and No. 2, 30 votes. Quoting from the minutes of the meeting, it appears that:

77 Or.—31

"The chairman announced that, insomuch as there was not a two-thirds vote for either site, another ballot was ordered. The second resulted as follows: No. 1 received 4 votes; No. 2 received 29 votes. Mr. Van Aukin thereupon announced that site No. 2, having received the necessary two-thirds vote, was properly selected for the new schoolhouse site."

By a vote of 39 to 2 the resolution here set out was then adopted by the meeting:

"It is hereby resolved by the legal voters of school district No. 5, Douglas County, State of Oregon, in lawful meeting assembled upon the 17th day of November, 1913, at the schoolhouse in said district and at 3 o'clock in the afternoon of said day, that we authorize the board of directors of said school district No. 5 to contract a debt by borrowing money or otherwise in the sum of $3,500 for the purpose of building a school building and for the purchase of land for school purposes, namely, a schoolhouse site, and issue negotiable interest-bearing warrants of said school district No. 5 evidencing such debt, and the time of the payment of the same is fixed at three years; also that the board of directors may from time to time, not oftener than once a year, levy a tax on the taxable property of said school district No. 5 to pay the interest upon said warrants evidencing such debt when due, and to pay the principal when due. That it is the intention of this meeting to proceed according to Section 114, School Laws of Oregon, 1913, compiled by J. A. Churchill."

The following allegations then appear in the complaint:

"That said defendants, the above-named board of school directors, by virtue of said pretended school meeting and said pretended election held on said seventeenth day of November, 1913, are threatening to, and unless restrained by order of this court will proceed to, condemn the land of plaintiff Ollie F. Castle, and will proceed to incur an indebtedness on the property of all

of the plaintiffs herein in the sum of $3,500. That in pursuance of said resolution above set out herein the said defendants, board of directors of said district No. 5, attempted to levy a tax on all of the taxable property of said district and to incur an indebtedness against said district in the sum of $3,500, which said tax was certified up by said defendants, board of directors of said district No. 5, to the assessor of Douglas County, State of Oregon, and by him extended on the tax-rolls of said county, and the same is now in the hands of the tax-collector for Douglas County, State of Oregon. That unless restrained by an order of this court the tax-collector will proceed to collect such tax out of the property of plaintiff, and that the same will be a lien on all of plaintiffs' property, to their irreparable injury and damage."

A demurrer to this complaint was sustained and the suit dismissed. The plaintiffs appeal.    AFFIRMED.

For appellants there was a brief over the names of *Mr. George Neuner, Jr.,* and *Mr. Commodore S. Jackson,* with an oral argument by *Mr. Neuner, Jr.*

For respondents there was a brief and an oral argument by *Mr. George M. Brown.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The following excerpts from Chapter 172, Laws of 1913, being "An act to provide for the duties and powers of district school boards, including their acts in connection with incurring indebtedness of their districts and funding and refunding the same," etc., are applicable to the case in hand:

"If authorized by a majority vote of the legal voters present at any legally called school meeting they shall purchase, lease or build schoolhouses, buy or lease

land for school purposes, furnish schoolhouses with furniture, lights, and apparatus, and for such purposes may, when so authorized, levy not oftener than once a year, a tax not exceeding 5 per cent of the value of the taxable property of the district, or issue or sell negotiable bonds as hereinafter in this act provided. They may also sell, lease, or otherwise dispose of any property belonging to the district, when authorized to do so by majority vote at any legally called school meeting: Provided, that the call for such meeting shall have stated that such sale, lease or disposition would be one of the objects of such meeting'': Section 1, subd. 5.

''When authorized by a majority vote of the legal voters present at any legally called school meeting, they may, in the name and on behalf of their district, contract a debt by borrowing money, or otherwise, not to exceed 5 per centum of the value of the taxable property of the district, for the purpose of building a school building or repair of school buildings, or for the purchase of land for school purposes, and issue negotiable interest bearing warrants (and fix the time of payment of the same) of their district, evidencing such debt; and they may from time to time, not oftener than once a year, levy a tax on the taxable property of the district to pay the interest thereon, or principal when due, which taxes shall be collected in the same manner as other school taxes are or may be collectible by law. * * '': Section 1, subd. 6.

''Whenever, in the judgment of the board, it is desirable or necessary to the welfare of the schools in the district, or to provide for the children therein proper school privileges, or whenever petitioned so to do by one third of the voters of the district, the district board shall call a meeting, at some convenient time and place fixed by the board, to vote upon the question of the selection, purchase, exchange or sale of a schoolhouse site, or the erection, removal or sale of a schoolhouse. Said election shall be conducted and votes canvassed in the same manner as at the annual election of school officers. Three notices of the time, place and purpose of such meeting shall be posted in three public places

in the district by the clerk at least 10 days prior to such meeting. If a majority of the voters present at such meeting shall by vote select a schoolhouse site, or shall be in favor of the purchase, exchange or sale of the schoolhouse, as the case may be, the board shall locate, purchase, exchange or sell such site, or erect, remove or sell such schoolhouse, as the case may be, in accordance with such vote: Provided, that it shall require a vote of two thirds of the voters present and voting at such meeting to order the removal of the schoolhouse, and such schoolhouse so removed cannot again be removed within three years from the date of such meeting'': Section 1, subd. 14.

In Section 2 of the act it is provided that school districts may contract bonded indebtedness for the purpose of erecting and furnishing a school building or buildings, or to purchase a site or sites therefor, or to fund or refund outstanding indebtedness, or for any, all, or either of such purposes, and to provide for the payment of the same by issuing bonds, when authorized by what is known as a ''bonding election.'' Being empowered by a majority vote to that end, the directors are required to issue bonds, and the county treasurer must register them and cause their delivery to purchasers, holding the proceeds subject to the order of the district board, to be used solely for the purpose for which the bonds were issued. Subdivision 4 of Section 2 of the act contains this excerpt:

''The district school board shall ascertain and levy annually, in addition to all other taxes, a direct annual *ad valorem* tax on all the taxable property in such school district, sufficient to pay the interest accruing on said bonds promptly when and as the same becomes due.''

Like mandatory language is used respecting the duty of the board to provide funds by taxation for the liqui-

dation of the bonds. It is further prescribed by the act that, if the district school board fail or refuse to levy the necessary tax or interest or sinking fund, the county treasurer shall report the same to the County Court and county board of commissioners, whose duty it then shall be to themselves levy the tax required. Subdivision 9 of Section 2 here follows:

"Whenever any school district shall have any outstanding warrant or bonded indebtedness incurred in building any schoolhouse or schoolhouses or in the furnishing of the same or for the purchase of any schoolhouse site or sites or in refunding or funding indebtedness, which indebtedness is due or subject under the pleasure or option of the school district to be paid or redeemed, it shall be lawful for said school district, by and through its district school board, to issue and exchange, for any such indebtedness, its bonds bearing not to exceed legal interest per annum; and said bonds shall in all respects conform to and be governed as to their issue by the provisions of Section 2 of this act except that the funding or refunding of said indebtedness and the issuing of bonds for such purpose shall not require an election, but may be done by resolution of the district school board at any legally called meeting thereof; and the validity of any bonds issued under the provisions of this section or of the indebtedness thereby funded or refunded shall not thereafter be open to contest by said school district or by any person or corporation for or on its behalf for any reason whatever."

As the law stood at the time of the events narrated in the complaint, Section 4088, L. O. L., read thus:

"District meetings, legally called, shall have power to levy a tax upon all real and personal property in their district and make any necessary appropriation for the support and benefit of schools, and also adjourn from time to time: Provided, that no tax shall be levied at any special meeting unless the call for such meet-

ing shall have stated that one of the purposes of such meeting would be the levying of a tax. The minutes of all school meetings must be signed by the chairman and secretary."

The plaintiffs question the regularity of the proceedings described, and argue that they constituted an attempt to order the removal of the schoolhouse, requiring for its accomplishment a two-thirds vote of the voters present. They urge also that, one vote having been taken, in which the proposed new site failed of receiving two thirds of the ballots, the power to vote on the question was exhausted, and no sanction can be imputed to the second ballot. The plaintiff's discussion of the issue proceeds upon the theory that but one schoolhouse can be had in a school district, and that any proposal to build another on a different site is an attempt to remove "the schoolhouse," requiring the greater majority mentioned. Our attention has not been directed to any statute restricting any school district to a single schoolhouse. On the contrary, we learn from subdivision 5 of Section 1 of the act in question that the board may be authorized to lease or build schoolhouses, in the plural. In subdivision 13 it is made the duty of all boards of directors to provide certain conveniences "for each of the schools under their charge," for which the board may levy a tax without a vote of the taxpayers.

The removal of a schoolhouse is not the only contingency provided for in subdivision 14 of that section under which the proceedings in question appear to have been taken. The board is authorized in that part of the law to call a meeting to vote, not only upon the removal of a schoolhouse, but also for the selection, purchase, exchange, or sale of a schoolhouse site, or the

erection of a building. Of all these things, only the removal of a schoolhouse requires a two-thirds vote. It was competent for the district by a majority vote to authorize the erection of a new schoolhouse. The removal of the old one was not involved, and a two-thirds vote was not required. We attach no importance to the second ballot, and hold that the majority vote disclosed by the first ballot was sufficient for any purpose indicated by the notice of the meeting.

2. Concerning the opposition to the condemnation of land, it is enough to say that the owner of the site which may be condemned has an ample and sufficient remedy at law by which she may resist the attempt to take her property, for it is hornbook law that in a complaint involving the exercise of eminent domain the one attempting to acquire the property of another through that prerogative must, as a condition precedent, show the authority for so doing. So, in this case, if the proceedings described fail to confer authority upon the district to exercise the right to condemn, the question could be raised by the defendant in the condemnation action. Having this plain, speedy and adequate remedy at law, the plaintiff Ollie F. Castle has no standing in this court of equity to invoke the extraordinary remedy of injunction.

3, 4. The other question about the validity of the tax which it is said the defendants have levied and are attempting to collect presents more difficulties. It is argued that, because the notice of the special meeting in question makes no express mention that a levy of a tax would be one of the purposes of the assemblage, the proposed exaction is utterly without foundation. The notice, in almost the exact words of the statute, announces the intention of voting upon the question of

authorizing the board to contract a debt for the purpose of building the schoolhouse by negotiating interest-bearing warrants. Clearly the right to incur the indebtedness on that basis is amply foreshadowed by the terms of the notice. The question to be determined is whether the right of the directors to levy a tax followed by operation of law upon their being authorized to incur the indebtedness. It is a well-settled principle that a remedial statute should be so construed as to give it practical effect according to the intention of the lawmakers. It would greatly impair the availability of the interest-bearing securities of school districts if a construction should be placed upon this statute whereby indebtedness might be incurred without present authority to provide for its payment. The uncertain future action of popular assemblies like a district school meeting, the personnel of which is variable, and might be different at each succeeding annual convocation, is not a sound asset upon which to borrow money. The credit of a school district ought not to rest upon such a fluctuating basis for indebtedness lawfully and beneficially incurred, unless by a fair construction of the statute there is no escape from such conclusion. It is contemplated by the terms of the act under discussion that a district may either pay cash for the equipment of schoolhouses, use interest-bearing warrants, or issue bonds. For the purpose of cash payments, subdivision 5 of Section 1 empowers the board, when directed by a majority vote of the legal voters, to build schoolhouses, among other things, and repeats the language, "when so authorized," in directing a levy to be made not oftener than once a year. On the other hand, the succeeding subdivision, treating of the issuance of negotiable interest-bearing warrants,

requires their negotiation to be sanctioned by a majority vote of the legal voters; but, still speaking of power of the board of directors, the statute omits in the very next clause the words "authorized by a majority vote of the legal voters," and uses this language:

"And they may from time to time, not oftener than once a year, levy a tax," etc.

When we consider this in connection with subdivision 9 of Section 2, which commissions the board of directors, without an election, but simply by its own resolution, to issue bonds in discharge of any outstanding warrant or bonded indebtedness, we are led to the conclusion that the liberty conferred upon the board to issue interest-bearing warrants necessarily carried with it *ex vi termini* the power to levy a tax for the payment of the same without any other vote or election. It would be idle to say that a debt might be incurred, but that no authority should exist to provide funds for its payment. If it were the intention of subdivision 6 to withhold from the directors the power to levy a tax in payment of the warrants issued for the purpose named, unless they were expressly authorized at each meeting of the electors to levy a tax, the board could easily evade that restriction by turning the indebtedness into the form of bonds under subdivision 9 of section 2, thus incurring the mandatory duty under subdivision 4 of levying the tax necessary to pay the bonded obligation.

It seems to be a fair and reasonable construction of the statute to say that, when notice is given that a vote will be taken upon the question of authorizing the board to contract a debt by borrowing money upon interest-bearing warrants, it follows by operation of law that the voters are thereby notified that, in case

such securities are issued, the duty of the board to itself levy the tax necessary to pay them follows as a matter of course. We see no good reason to doubt the validity of the indebtedness evidenced by the warrants described, or to question the authority of the board of directors to levy a tax for the payment of the same.

5. It is not directly stated in the complaint whether the directors have levied a single tax for the full amount of the indebtedness in one levy, or only for the interest. In any event, there is some tax legally due to be applied on the warrants mentioned, either for the interest or principal or both. The plaintiffs do not tender anything whatever on this account, and hence under such authorities as *Welch* v. *City of Astoria,* 26 Or. 89 (37 Pac. 66), and *Dayton* v. *Multnomah County,* 34 Or. 239 (55 Pac. 23), they have no standing to invoke relief in equity.

The decree of the Circuit Court is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.