Argued July 10; modified July 24; rehearing denied
September 25, 1934

# NEW AMSTERDAM CASUALTY CO. ET AL. *v.*
## HYDE ET AL.

(34 P. (2d) 930, 35 P. (2d) 980)

*Harry J. De Francq,* of Portland (J. S. Moltzner, of Portland, on the brief), for appellants.

*A. G. Fletcher,* of Portland, for Ida J. Hyde and others.

*I. N. Smith* and *Richard Talboy,* both of Portland (Platt, Platt, Smith & Black, of Portland, on the brief), for Sarah M. Hewitt.

CAMPBELL, J. A. E. Peirce & Company, the predecessor in interest of plaintiff, Jackson and Michigan Securities Corporation, during the year 1930, obtained a permit as a broker of securities in Oregon, and plaintiff, New Amsterdam Casualty Company, executed with said broker its bond in the sum of $5,000 to secure said permit. Ida J. Hyde and Alice F. Hyde brought an action in the circuit court of Multnomah county (hereafter referred to as case No. 105-446), based on fraud, on said bond against said broker and its surety. The defendants therein denied all liability, and contested said action on its merits, and after hearing, including an appeal to this court, judgment was entered thereon in favor of plaintiffs therein for the sum of $2,850 and the further sum of

$247.99, and attorney's fees in the sum of $1,200, and costs. Without filing a supersedeas bond, appeal was taken by defendants therein to this court and after due hearing on the merits, the judgment was af-. firmed: *Hyde v. Peirce*, 147 Or. 5 (31 P. (2d) 755). After the judgment had been entered in the circuit court, and pending its appeal in this court, plaintiffs herein, who were defendants therein, brought this suit making defendants, all persons who had made claims against said surety on said bond, including said Ida J. Hyde and Alice F. Hyde.

Defendant Sarah M. Hewitt, prior to the institution of this suit, had obtained judgment against A. E. Peirce & Company, the principal in the bond, in the approximate sum of $3,000, based on its fraudulent transaction as broker.

The instant case is brought for the purpose of obtaining a declaratory judgment fixing the extent of plaintiffs' liability on said bond generally, and to each of said defendants specially, and asking that defendants Hyde be restrained from issuing execution on their judgment until this cause be heard and determined. A temporary injunction was issued upon filing the complaint, thus preventing defendants Hyde from issuing execution on their judgment. Plaintiffs made settlement with, and the suit was dismissed against, all defendants except Ida J. Hyde and Alice F. Hyde and Sarah Hewitt.

Plaintiffs allege that their total liability on the bond is the sum of $5,000 and that the aggregate claims filed against them on said bond greatly exceed that amount, and that said sum should be paid on the several judgments obtained against them in the order in which said judgment shall have been obtained until the total sum

is exhausted. They ask in the prayer of their complaint, among other things, to have these questions determined: (1) What is the total extent of their liability under the bond? (2) To what claims the sum, obtained from the bond, should be applied?

To plaintiffs' complaint many dilatory pleas and counter pleas were filed and the cause was handed around from one department to another of the circuit court of Multnomah county. Upon the demurrer and motions of defendants Hyde being overruled, they filed their answer consisting of a general denial and five further and separate answers and defenses.

The first separate answer and defense plead *res adjudicata* by reason of plaintiff, New Amsterdam Casualty Company, having answered in the cause brought by these answering defendants against the plaintiffs herein and denying in that case any liability whatever upon the bond and not having had all the other claimants against the fund interpleaded therein; that plaintiffs herein knew at the time they answered in that action that many others were making claims against the bond.

For a second separate answer and defense these answering defendants alleged in effect that, because in the case above referred to as case No. 105-446, defendants denied liability and at the time knew of the claims that the other defendants herein were making against the bond and did not have said claimants interpleaded, or plead, or of not knowing how the bond money should be applied and to whom paid, and that the joint tort-feasors have since become insolvent and plaintiff should now be estopped from asking for a prorating of the fund among the several claimants as far

as the judgment of these answering defendants is concerned.

For a third separate answer and defense they alleged in effect that if plaintiff pays the judgment obtained by these defendants such payment would operate as a *pro tanto* application in the fund named in the bond as to any future judgments obtained by other parties.

For a fourth separate answer and defense they allege that plaintiffs are not coming into court offering to do equity inasmuch as they have only made such parties defendants hereto as have commenced suit or action against either of said plaintiffs and that they know that there are many others who are potential claimants to a part of the sum secured by the bond, if such sum is prorated.

For a fifth separate answer and defense, they alleged, in effect, that plaintiff, New Amsterdam Casualty Company, the surety, is amply protected by plaintiff Jackson and Michigan Securities Corporation, the successor to A. E. Peirce & Company, the principal on the bond.

They pray for a dismissal of the suit and a dissolution of the injunction.

Defendant Hewitt demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of suit, and lack of jurisdiction of the court over the subject matter. This demurrer was overruled and no answer filed by defendant Hewitt.

Defendants Hyde also moved to perpetuate testimony of certain witnesses.

Plaintiffs moved to strike from defendants Hydes' answer, their fifth separate answer and defense which

motion was heard by the court, and on this state of the record the trial court entered the following order:

"The motion of plaintiffs to strike from the second amended and supplemental answer of the defendants Ida J. Hyde and Alice F. Hyde the entire Fifth further and separate answer thereof, and the petition of the defendants Ida J. Hyde and Alice F. Hyde to take conditionally and perpetuate certain testimony now coming on for hearing, and the plaintiffs appearing by Harry J. DeFrancq, of attorneys for plaintiffs, and the defendants Ida J. and Alice F. Hyde appearing by A. G. Fletcher, their attorney, and arguments being had and the court being fully advised in the premises and having before it the records and the files in this suit, and believing that the only issue in this suit has been fully settled as between the existing parties hereto and by a ruling of another department of this same court, and, further, that this suit was brought under the declaratory judgment law of the State of Oregon of 1927 and the amendments thereto, and that by such ruling of the other department of this court the purpose of this suit was and has been fully accomplished, and the court being of the opinion that the full liability under the terms of the bond in question is the sum of Five Thousand Dollars, so finds, and

IT IS THEREFORE, ORDERED that the judgment of this court is that the liability of New Amsterdam Casualty Company, a corporation, on said bond is the sum and amount of Five Thousand Dollars, that such liability is a net liability and exclusive of any interest after demand costs or attorney's fees that may be allowed against the said New Amsterdam Casualty Company and over and above and in addition to any such interest, costs and attorney's fees; that said suit and cause as to all other matters and things and questions than as above determined be and the same is hereby dismissed; and

IT IS FURTHER ORDERED that the injunction order issued out of this court on the 8th day of July,

1933, enjoining the issuance and levying of execution on the said judgment be and the same is hereby vacated and dismissed.''

From this decree plaintiffs appeal, assigning as error that the court erred in dismissing plaintiffs' complaint without adjudicating how the fund from the bond should be applied.

Defendant Hewitt filed a cross-appeal from that part of the decree holding that the extent of the liability of plaintiff, New Amsterdam Casualty Company, on the bond, is the sum of $5,000, the amount named therein and in failing to determine that the funds should be prorated among the different claimants.

Defendants Hyde appeal from that part of the decree adjudicating plaintiffs' total liability to be the sum of $5,000.

These are the only questions that are presented by the briefs or argued before the court.

The first question to be determined is, what is the extent of the liability of the plaintiff, New Amsterdam Casualty Company, under the bond. The bond reads as follows:

''That we, Albert E. Peirce & Co., Chicago, Illinois, as principal, and New Amsterdam Casualty Company, a corporation organized existing under and by virtue of the laws of the State of New York, and duly authorized to do a surety business within the State of Oregon, as surety, are held and firmly bound unto the STATE OF OREGON, in the full penal sum of FIVE THOUSAND DOLLARS ($5,000), lawful money of the United States, for the payment of which, well and truly to be made, we, and each of us, bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents,

"THE CONDITIONS OF THIS OBLIGATION ARE SUCH, that Whereas, the above bounden principal has applied to the Corporation Commissioner, of the State of Oregon for a Broker's Permit in accordance with chapter II of title XXXIX, Oregon Laws, as amended, known as the 'Blue Sky Law';

"NOW THEREFORE, if the said principal, its officers, agents, employees and trustees, shall conduct and carry on its said business as a Stock and Bond Broker without fraud or fraudulent representation, and shall comply with all the requirements and provisions of said act, and acts amendatory thereof, and shall honestly and faithfully perform every undertaking and agreement entered into by it as a licensed broker under said act, and shall refrain from doing any act or thing, and from any conduct constituting improper, fraudulent or dishonest dealing, within the meaning of said act, then this obligation shall be void; otherwise to remain in full force and effect.

"PROVIDED, the above named surety shall have the right to terminate its liability under this bond by serving written notice of election so to do upon the principal herein and upon the Corporation Commissioner, and thereupon the said surety shall be discharged from any future liability hereunder for any default of the said principal occurring after the expiration of thirty (30) days from and after the receipt of such notice by the Commissioner."

This appears to be a new question in this state. The decisions of courts of other states appear to be of little assistance for the reason that all the adjudicated cases cited under the Blue Sky law are made on a statute differing materially from the Oregon law. So we must resort to the general principles governing the liability of sureties or indemnity bonds.

It is a well-established rule of law that a surety or bondsman may only be held for the amount of the

penalty stipulated in the bond. The bond under consideration was executed in 1930. It was payable to the State of Oregon. It was conditioned that:

"* * * if the said principal, its officers, agents, employes, and trustees, shall conduct and carry on its said business as a Stock and Bond Broker without fraud or fraudulent representation, and shall comply with all the requirements and provisions of said act, and acts amendatory thereof, and shall honestly and faithfully perform every undertaking and agreement entered into by it as a licensed broker under said act, and shall refrain from doing any act or thing, and from any conduct constituting improper, fraudulent or dishonest dealing, within the meaning of said act, then this obligation shall be void; otherwise to remain in full force and effect."

In simple language this means that if the principal fails to comply with all the provisions of the Blue Sky law then the obligors would be jointly and severally bound to pay the State of Oregon $5,000. No one will seriously contend, that under those conditions the state, or any one suing in the name of the state on the bond, could recover more than the full amount mentioned therein for a breach of its conditions. The legislature was powerless to increase that liability, and did not do so by its enactment at its session of 1931, by the amendment to the Blue Sky law:

"Any person suffering loss or damage arising out of a violation of this act by any dealer or broker who has furnished a bond * * * may sue on said bond in his own name." Oregon Laws, 1931, Ch. 166, p. 234, § 4.

This was simply a procedural change not affecting the extent of the liability: *Hyde v. Peirce,* supra. The language of this amendment cannot be construed into meaning that the liability of the bond was thereby in-

creased. The Blue Sky law was undoubtedly enacted for the protection of the investing public (*State v. Whiteaker*, 118 Or. 656 (247 P. 1077)) and is remedial in its nature and must be liberally construed, so as to carry out its purpose: *Wright v. Wimberly*, 94 Or. 1 (184 P. 740); *Landers v. Van Aukin*, 77 Or. 479 (151 P. 712). But that liberality of construction does not extend to placing burdens on an obligor that he did not assume in his contract. The statute (Blue Sky law) does not depend entirely upon the bond for the protection of the investor. It has several other sections besides that providing for a bond, including suspension of permits, and fine, and imprisonment in the penitentiary of the state upon a conviction of a violation of any of its provisions: Oregon Code 1930, § 25-1320.

Appellants rely strongly on the case of *Salo v. Pacific Coast Cas. Co.*, 95 Wash. 109 (163 P. 384, L. R. A. 1917D, 613). This was an action on a bond required by the laws of the state of Washington for an operator of a motor driven vehicle carrying passengers for hire to secure indemnity to persons injured by the operation of such vehicle. The bond was in the sum of $2,500 in favor of the state of Washington and conditioned under section 2 of the act:

"For the faithful compliance by the principal of said bond with the provisions of this act and to pay all damages which may be sustained by any person injured by reason of any careless, negligent or unlawful act on the part of said principal, * * * in the conduct of said business or in the operation of any motor propelled vehicle used in transporting passengers for hire * * *." Rem. Code, § 5562-38.

Section 3 of the same act gave "every person" injured by reason of the negligent or unlawful operation of such vehicle "a cause of action against the principal

and surety upon the bond * * * for all damages sustained'' in which the person injured could recover the full amount of such damages from the principal ''but the recovery against the surety shall be limited to the amount of the bond''. It was held by a divided court (five to four) that the liability on the bond was multible because the statute said ''every person'' injured shall have such cause of action, it meant that the limitation applied to each recovery and not to the aggregate recoveries. The same construction was followed by the same court in *Com. State Bank v. Palmerton-Moore Grain Co.,* 152 Wash. 89 (277 P. 389), in construing a warehouseman's bond.

*Salo v. Pac. Coast Casualty Company,* supra, as reported in L. R. A. 1917D, 613, has an extensive note in which the doctrine announced in the reported case is criticized and other cases digested show that the weight of authority is contrary to that announced in the reported case.

Appellants cite *Witter v. Mass. Bonding Co.,* 215 Iowa, 1322 (247 N. W. 831, 89 A. L. R. 1065) and *National Surety Co. v. Graves,* 211 Ala. 533 (101 So. 190). These are cases arising under a Blue Sky law different from the Oregon statute.

''One or more recoveries upon such bond shall not vitiate the same * * * but no recoveries from the surety upon any such bond shall ever exceed the full amount of the same.'': Iowa Code 1931, 8581-c14; Ala. Gen. Acts 1919, 948. The Iowa case distinguishes between it and the Salo case by reason of the difference of the statutes. The weight of authority is that the extent of the liability on the bond is measured by the amount of the penalty therein stated: *Leggett v. Humphreys,* 21 How. 66 (16 L. Ed. 50); *Merrinane v. Miller,* 157 Mich.

279 (118 N. W. 11, 25 L. R. A. (N. S.) 585); I Brant on Suretyship (3d Ed.) § 126; *Squires v. Miller,* 173 Mich. 304 (138 N. W. 1062, 43 L. R. A. (N. S.) 76); *Goodspeed v. Duby,* 131 Or. 275 (281 P. 6); *Southern Surety Co. v. Bender,* 41 Ohio App. 541 (180 N. E. 198).

We, therefore, hold that the appellant, New Amsterdam Casualty Company, is liable in the aggregate only to the extent of the penalty named in the bond. This of course does not include attorney fees, interest, or costs: *Goodspeed v. Duby,* supra.

 The question of plaintiffs' liability to respondents Hyde presents a more complicated problem. As a general rule where a bond is given to protect the individual members of the public who deal with the principal on the bond, from injury, caused by his fraud or negligence and the extent of the surety's liability is limited to certain amount, when claims are made to the surety in excess of the amount of the penalty, the total amount of the penalty should be prorated among the persons so damaged. The surety may go into a court of equity and have all claimants interpleaded and have the court prorate the fund upon the claims established: *Bradford v. National Surety Company,* 207 Ala. 549 (93 So. 473); *Commonwealth v. Deposit and Surety Co.,* 224 Pa. 223 (73 Atl. 425); *Southern Surety Company v. Bender,* 41 Ohio App. 541 (180 N. E. 198); *National Surety Company v. Graves,* 211 Ala. 553 (101 So. 190).

██ Where a surety denies all liability and compels one claimant to litigate his claim and prosecute such litigation to judgment, where the surety had knowledge of other claims against the bond and had an opportunity, *in that action* to present his defense by interpleader that there were other claimants, he could not,

after the rights between him and the claimant have been legally adjudicated in a court of competent jurisdiction and the claim reduced to a judgment, then ask the aid of a court of equity, either by declaratory judgment or otherwise, to litigate matters that he could have had litigated *in the action at law*: *Parker v. Reid,* 127 Or. 578 (273 P. 334).

The contention of appellants Hyde that defendants in case No. 105-446 failed to avail themselves of the defense of interpleader therein, therefore their claim presented by their allegation in the complaint in the instant suit comes too late. Assuming that the facts were such, which we do not pass upon, that defendants therein could have availed themselves of an interpleader in case No. 105-446, which was strictly an action at law, they had no opportunity of having all claimants against the bond interpleaded therein. Defendants therein, to present such a defense, would have been compelled to resort to a court of equity. In this state, the jurisdiction over actions at law and suits in equity is separate and distinct. In the state of Louisiana there is no such distinction, therefore the cases cited from that state are not applicable: *American Surety Co. v. Brim,* 175 La. 959 (144 So. 727). Interpleader is an equitable proceeding unless made applicable to actions at law by statute: 33 C. J. 419.

In Massachusetts the statute authorizes interpleaders in actions at law.

"The statute, authorizing this summary proceeding in actions at law, does not alter the settled doctrines applicable to bills of interpleader. 'The statutory remedy is a mere substitute for the equitable remedy by suit, in the kinds of action to which it applies, and is governed by the same rules.' (Citing many authorities)" *Gonia v. O'Brion,* 223 Mass. 177 (111 N. E. 787).

In the Texas case cited by appellants Hyde, as sustaining their contention, that court says:

"It is the general rule that a bill of interpleader comes too late when application therefor is delayed until after judgment has been rendered in favor of one of the claimants of the fund, and this is especially true where the holder of the fund had notice of the conflicting claims prior to the rendition of such judgment and an opportunity to implead the adverse claimants in the suit in which such judgment was rendered." *United Producers Pipe Line Co. v. Britton* (Texas) 264 S. W. 576.

 The contention of appellant Hewitt is, that because the plaintiff New Amsterdam Casualty Company did not withdraw its bond, but left it on file, it therefore must be considered as a separate bond for each period for which a permit had been issued. However, the parties thereto treated it as a continuing bond. The plaintiffs could not withdraw the bond. The bond within itself provides the method by which the surety thereon could relieve itself from liability for future acts of the principal. But neither the surety nor the principal could withdraw the bond from the files of the office of the corporation commissioner.

The respondents Hyde were not injured by any act of the surety. They prosecuted their action (No. 105-446) to judgment. They had their claim liquidated at the expense of the surety, including their attorney's fees in said action. If now obliged to prorate their claim with others who did not prosecute their claim with equal speed and vigor, they should not complain as all the expenses of their vigorous prosecution will be paid by the surety.

 "Courts of record within their respective jurisdictions shall have power to declare rights, status, and

other legal relations, whether or not further relief is or could be claimed. * * *.'': Oregon Code 1930, § 2-1401. "Any person interested under a * * * written contract * * * or whose rights * * * are affected by a statute * * * may have determined * * * and obtain a declaration of rights, status or other legal relations thereunder.'': Oregon Code 1930, § 2-1402.

If we refused to grant the plaintiff, New Amsterdam Casualty Company, a declaratory judgment, it would be compelled to solve debatable questions at its peril. It was not a wrong-doer. It had not caused defendants or either of them injury. It was simply the surety on the bond of the principal to the extent of the penalty named in the bond. It is willing to bring the money into court and pay it in whatever way and to whom the court will declare it shall be paid.

We are of the opinion that the fund arising from the bond should be prorated among such claimants as shall have established their claims. Such prorating shall not relieve the principal from any balance remaining unpaid whether action was brought on the bond or the claim otherwise established.

The decree of the circuit court will be modified and one entered in conformity with this opinion. Neither party to recover costs in this court.

It is so ordered.

BAILEY, J. (concurring in part and dissenting in part).

I concur in the conclusion reached in the majority opinion to the effect that the limit of liability of the surety on the bond in question is the sum of $5,000, and that each individual having a valid claim should share

*pro rata* in the division of the $5,000 to be paid by the surety, in the event that the total of the claims exceeds the penalty named in the bond.

To enunciate, however, the doctrine that the amount of the bond should be prorated among those having just claims, without some qualification or limitation, is merely to invite further litigation and to render practically worthless the protection intended to be afforded by the bond to those who have been defrauded by the financially irresponsible promoter or dealer.

When and in what manner it is to be determined who are entitled to share in the fund created by the bond should be pointed out with some particularity. Take the instant case: Suppose no other action had been instituted or other claim made against either the principal or surety on the bond until after the entry in the circuit court of the mandate in the Hyde case, would the surety on the bond have been protected had it paid the judgment in full before it had knowledge of any other claim? And if protected to the extent of the amount paid, what would become of the doctrine that all *bona fide* claimants are to share *pro rata*? On the other hand, if such payment should not extinguish *pro tanto* the surety's liability on the bond, could the surety by some equitable proceeding have execution on the judgment deferred until all possibility of the assertion of any other claim ceased to exist?

There are countless instances in which bonds have been given to protect the general public or certain designated classes of individuals, and the opinion of the majority of the court herein is almost certain to lead to confusion. If it be made possible for the surety to contest its liability to the limit and, if unsuccessful, force the judgment creditor into a court of

equity to litigate again the amount of his recovery, as is here attempted, it will discourage any one from ever seeking to recover for the loss he has suffered. The fact that if successful he would be entitled to his attorney's fees and costs would be poor recompense for the risks he would be subject to and the expense incurred.

The recent enactment of a statute allowing the plaintiff in an action on a surety bond, if successful, a reasonable attorney's fee does not confer upon a court of equity any greater jurisdiction or power in litigation like this than would be the case if no attorney's fee were allowed.

According to the opinion of the majority of the court, the surety company can litigate the claims filed against it until the amount of the penalty provided in its bond has been reached or exceeded, then pay the amount of the bond into court and interplead all the claimants who have obtained judgments and those claimants who have not done so, and let them scramble among themselves for the fund. The surety company would not longer be concerned in whether or not the demands of those who had not had their claims reduced to judgment were exorbitant. Some one would have to contest claims which had not been liquidated, or those claimants would profit at the expense of the judgment creditors, both as to amount to which they would be entitled and as to expense incurred.

In my opinion we should, in the absence of legislative enactment, provide some method whereby the giving of a surety bond would mean more than an invitation to prolonged litigation. Recently in the case of *Logan v. Equitable Trust Company,* 145 Or. 684 (29 P. (2d) 511), we held that a trustee of certain funds when

sued in an action at law for alleged fraudulent representations could enjoin the prosecution of the action and cause all those situated as the plaintiff in the law action to litigate their claims or demands in equity, and this without admission on the part of the trustee of any liability.

There is no reason why a surety should not be compelled to follow a like procedure when it has knowledge that more than one claim may be asserted against it, if it wants to limit its liability to the penalty named in the bond. If, however, it denies all liability and litigates the matter to a finality, it ought not then to be afforded equitable relief in avoiding the payment of a judgment rendered against it.

Then, again, a surety should not be permitted to defer the payment of a judgment against it on the supposition that other claims may be presented. If the surety in good faith and without knowledge of other *bona fide* claims pays a judgment, such judgment, exclusive of costs, attorney's fees and interest on the judgment, should *pro tanto* extinguish the surety's liability.

If the proceeding here adopted by the plaintiffs is in the nature of an interpleader or accomplishes the same purpose, then it comes too late to have any effect on the judgment recovered by the defendants Hyde against the principal and surety on the bond: *Yarborough v. Thompson,* 11 Miss. 291 (41 Am. Dec. 626); *McKinney v. Kuhn,* 59 Miss. 186; *Union Bank v. Kerr,* 2 Md. Ch. 460; *Haseltine & Walton v. Brickley,* 57 Va. 116; *DeZouche v. Garrison,* 140 Pa. 430 (21 Atl. 450).

In my opinion, the declaratory judgment act was never intended to be an aid in avoiding, modifying or

nullifying a judgment entered on the merits of a controversy.

For the reasons hereinabove stated, I can not concur in the majority opinion to the effect that the Hydes are entitled only to their *pro rata* share of the $5,000, exclusive of attorney's fees, costs and interest. When the surety company elected to contest its liability in the law action it ought to be bound by the judgment therein rendered.

---

Petition for rehearing denied September 25, 1934

ON PETITION FOR REHEARING
(35 P. (2d) 980)

 CAMPBELL, J. Appellants and respondents have each filed petitions earnestly requesting a rehearing herein. They also suggest that one statement contained in our opinion is susceptible of more than one construction: That is, where we say, "That the fund arising from the bond should be prorated among such claimants as shall have established their claims." Petitioners claim such statement may be construed to mean that the fund shall be applied only to the claims that have heretofore been established. While we deem such a construction would place quite a strain on the language used, we may clarify it by saying that it means that the bond or funds arising therefrom, was, and is intended for the protection of each one who may have been injured by reason of the violation of the terms of the bond. And all that is necessary for the party so injured to do, to entitle him to share in said fund, is to establish his claim before a court of competent jurisdiction having supervision over the administration of the fund. This court has no power

to substitute or add conditions to the bond to which the obligor did not agree. Our authority consists solely in the ascertaining and declaring what is in terms or substance contained in the instrument and not "to insert what has been omitted or omit what has been inserted": Oregon Code 1930, § 9-214.

If the statute does not sufficiently secure the investor, the legislature is the body to provide for the additional protection.

The other questions raised in the petition for rehearing were contained in the original briefs and passed upon in our former opinion.

The rehearing will be denied.