280 So.2d 469 (1973)
The TRAVELERS INDEMNITY COMPANY, a Corporation, Appellant,
v.
Reubin O'D. ASKEW, for the Use and Benefit of American Heritage Life Insurance Company, Appellee.
No. S-121.
District Court of Appeal of Florida, First District.
July 12, 1973.
*470 George Stelljes, Jr., of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellant.
Nelson M. Harris, Jr., of Knight, Kincaid, Poucher & Harris, Jacksonville, for appellee.
PER CURIAM.
Defendant, Travelers Indemnity Company, a corporation, has appealed a summary final judgment rendered in favor of the use-plaintiff, American Heritage Life Insurance Company, awarding to the latter a money judgment on four claims made by it against the surety bond issued by Travelers.
Defendant, First Mortgage Company of Daytona Beach, a corporation, qualified to do business as a mortgage broker under the mortgage brokerage act of this state.[1] In order to exercise the license granted it, First Mortgage Company procured from Travelers and filed with the Department of Banking and Finance of Florida a surety bond in the amount of $5,000.00. The provisions of the mortgage brokerage act, pursuant to which the surety bond was given, provide in pertinent part as follows:
"Every person, firm, association, or corporation licensed as a mortgage broker, shall deposit with the department prior to doing business as such, a bond in the amount of five thousand dollars, executed by the mortgage broker as principal and a surety company authorized and licensed to do business in the state, as surety. The bond shall be conditioned upon the faithful compliance of the broker so licensed with the provisions of this act and that he will conduct the business of a mortgage broker in a reliable and dependable manner. The bond shall run to the state for the benefit of any person injured by the wrongful act, default, fraud or misrepresentation of the broker or its solicitors. Before any person, firm, association or corporation shall have any right of action or any right whatsoever against the principal or the surety under the bond and before any such right of action or any such right whatsoever shall exist or arise, such person, firm, association or corporation, within a period of five years after the termination or cancellation of the bond must have given to the department, the surety and the principal written notice of claim under the bond. The giving of such notice of claim under the bond within said period of five years shall be a condition precedent to any right of action or right whatsoever against the principal or the surety and the failure to give such notice as aforesaid shall render the obligation null and void and of no effect as to such person, firm, association or corporation. Only one bond shall be required of any person, firm, association, or corporation irrespective of the number of mortgage brokers employed by or who are members of said firm, association, or corporation."[2]
The conditions of the surety bond issued by Travelers conform to the language of the statute and is in the following words and figures, to wit:
"The conditions of the foregoing obligation are that the Principal, the above bounded, a licensed Mortgage Broker under Chapter 494, Florida Statutes, is obligated to faithfully comply with the provisions of said act and that he will conduct the business of a Mortgage Broker in a reliable and dependable manner and that this bond is given for the benefit of any person injured by the wrongful act, default, fraud, or misrepresentation of the Mortgage Broker and/or its solicitor."
*471 The use-plaintiff, American Heritage, filed its complaint against the mortgage broker and Travelers, in which it alleged four different instances in which it had entered into agreements with the broker to represent it in connection with mortgage loans to be made by American Heritage to four different individuals. The complaint alleged that the broker failed willfully or negligently to properly handle the mortgage loans contrary to the obligations imposed upon it by the mortgage brokerage act and in violation of the terms and conditions of its surety bond. The complaint alleged that as a result of the broker's failure to reliably and dependably perform its duties and obligations in accordance with its agreements, American Heritage suffered losses on the four loans made by it in the total amount of $8,211.45 for which it claimed judgment plus interest at the legal rate and court costs.
After filing its defenses to the action, Travelers filed in the cause its consent to entry of judgment in favor of American Heritage but only in the sum of $5,000.00 plus such interest as the court determined was due upon that sum together with legally taxable costs. By this consent Travelers agreed to pay the full amount of the surety bond furnished by it but insisted that it was not liable for the amount of damages suffered by American Heritage in excess of the maximum limits of the bond.
By the summary judgment appealed herein the trial court rejected Traveler's contention and entered final judgment against it for the full amount of damages claimed by American Heritage to have been suffered by it on the four mortgages handled by its mortgage broker. The amount of the judgment was in the sum of $8,211.45 principal together with the sum of $1,240.80 allowable interest plus taxable court costs.
By this appeal Travelers contends that the full extent of its liability on the surety bond furnished by it is the penal sum recited therein of $5,000.00, and that the trial court erred in imposing upon it the full amount of damages suffered by American Heritage in excess of the bond limits.
The general rule recognized by the almost unanimous weight of authority in this country is that recovery on a penal bond is limited to the amount of the penalty named in the bond, with interest from the date of breach. This general rule prevails even though the bond is for the protection of more than one person or is subject to renewal from term to term.[3] The only exception to the general rule is in those instances where the wording of the bond or the statute pursuant to which it was given indicates an intention to extend the liability of the bond beyond the maximum sum stated therein.[4]
In the early case of Humphreys v. Leggett[5] the Supreme Court of the United States construed the provisions of a surety bond furnished under the laws of Mississippi and conditioned for the faithful execution by a county sheriff of the duties of his office. In that case the court held that the limit of the surety's liability was the penal amount set forth in the bond and that, if the claims made against it exceeded the total amount of the bond, the claims should be prorated to the full amount but not in excess of the bond limits.
A similar ruling was pronounced by the Court of Appeals of New York in the case of Guffanti v. National Surety Co.[6] In construing the liability of a surety on a bond furnished by it for a person engaged in the business of selling steamship tickets, as required by the laws of New York.
Perhaps the most elucidating opinion dealing with the principle of law now under *472 consideration is one rendered by the Supreme Court of South Carolina in the case of Brown v. National Surety Corporation.[7] That case involved an action for damages brought by an injured plaintiff against a surety company on a highway patrolman's bond furnished by it pursuant to the requirements of a state statute. There the penal amount of the bond furnished by the surety company was limited to the sum of $2,000.00. The damages claimed by the plaintiff in the case was for the full amount of the bond furnished by the surety. As a defense to the action, the surety alleged that two or more other persons were likewise making claims against its bond because of the breach of its condition by the highway patrolman; and that if each of the claimants should secure a judgment against it for the damages suffered by him, the total amount of judgments would far exceed the $2,000.00 limit of the surety's liability fixed in the bond sued upon. The surety prayed for an injunction to restrain all claimants against it from seeking execution on any judgments they might recover until all claims had been adjudicated and asked that each claimant then be awarded only the proportionate share of the surety bond fund which his damages bore to the whole. The question presented for decision was whether the surety's liability was limited to the penal sum set forth in its bond or whether each claimant against the bond would be entitled to recover the full amount of his damages up to the limits of the penal sum of $2,000.00 set forth therein. In adhering to the general rule representing the great weight of authority in this country that where several persons have a cause of action on a public or official bond, they may not together recover more than the penalty of the bond although the aggregate of the judgments may exceed the penalty, the court construed the statute of South Carolina under which the bond was given. The statute there in question provided that the surety bond to be furnished by a highway patrolman should be conditioned for the faithful performance of his duties and to pay any judgment recovered against him upon a cause of action arising out of breach or abuse of official duty or power and damages sustained by any member of the public from any unlawful act of such officer. The court held that the word "any" appearing in the statute and in the bond should not be construed to mean "each and every" and, therefore, it was not the intent of the statute to provide that the liability of the surety should exceed the penal amount stated therein or that several persons could recover under the bond the full penal amount on each of their claims which conceivably could exceed by many times the total amount of the liability assumed by the surety when issuing the bond. In reaching this conclusion, the court reasoned:
"Looking to the broad aspects of the case, it is without doubt true that bonding companies have to have some basis for the fixing of their risks and premium rates. If the construction of the bond is as contended for by the plaintiff, that the bond is liable for each and every judgment for $2,000 or less, even though they aggregate more than $2,000, the company would have no definite basis for fixing the amount of premiums, as it would be utterly impossible for it to know how many people would be damaged by the acts of the patrolman."
In the case of Worden v. Hunt[8] the Second District Court of Appeal construed the statute of this state which requires deputy sheriffs to furnish surety bonds as a condition of their employment. The statute in question provides that the amount of the bond shall be in the sum of $1,000.00 and that the sureties "shall be liable for all fines and amercements imposed upon their principal". The two plaintiffs in the case were awarded judgments against a deputy *473 sheriff for his illegal acts in the amounts of $2,000.00 and $1,000.00 respectively. They then sought to collect their judgments against the defendant surety company on the bond furnished by it which was in the penal sum of $1,000.00. It was their contention that the above-quoted section of the statute, which provides that sureties shall be liable for all fines and amercements imposed upon their principal, was sufficiently broad to demonstrate a legislative intent that the full amount of the surety bond shall be liable for each claim made against it and, therefore, each plaintiff was entitled to recover the sum of $1,000.00 against the surety. The trial court held to the contrary and awarded each plaintiff the proportionate part of the $1,000.00 bond fund that his claim bore to the total amount of the claims but not exceeding the bond limits. In affirming the trial court's decision, the Second District Court held that an examination of the act providing for the furnishing of surety bonds by deputy sheriffs made no mention of liability, limited or unlimited, of sureties. It further held that, in construing statutes, it is well settled in Florida that the manifest intent of the legislature will prevail over the literal import of words used by it and that no literal interpretation should be given that leads to an unreasonable conclusion or to a purpose not intended by the lawmakers. In concluding its opinion of affirmance, the court said:
"If the last sentence of the Section relied upon by the appellants was intended to place unlimited liability upon the surety, then the provision of the Section fixing the penal sum of the bond would have no purpose or meaning and would be mere surplusage. Where in a statute general words follow the designation of a particular subject, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designation. 30 Fla. Juris., Statutes, Section 86, p. 186. Since this Section first fixed a definite principal sum as the penalty of the bond, the later wording in the Section reading:
"`The aforesaid sureties shall be liable for all fines and amercements imposed upon their principal.'
should, therefore, be construed as meaning that the sureties shall be liable for all fines and amercements imposed upon their principal within the limits of the sureties' liability as fixed by the penalty of the bond."
Thus in the case sub judice the language of the statute under which the bond in question was given, as well as the wording of the bond itself, provides that the bond shall run to the state for the benefit of any person injured by the wrongful act, default, fraud, or misrepresentation of the broker or its solicitors. On the authorities above cited, the words appearing in the statute, to wit, "any person", are not construed to mean that "each and every person" suffering a loss is entitled to recover against the surety the full amount of his damages up to the penal limits of the bond. Although the holding of the trial court reviewed herein interprets the provisions of the statute and the conditions of the bond in such manner as to afford the broadest possible coverage for persons suffering damages as the result of the negligence or default of their mortgage broker, it has the effect of reading into the statute provisions which the legislature did not see fit to include therein. We find nothing in the statute to indicate a legislative intent that a surety bond furnished by a mortgage broker under F.S. Chapter 494, F.S.A., should be liable for the full amount of every claim made against that bond during the term thereof up to the full penal limits thereof. Because the holding of the trial court in awarding the summary judgment appealed herein is contrary to the almost unanimous weight of authority in this country, as well as what we determine to be the sounder rule of law applicable to the issue before us, it must be rejected as a departure from the established principles of law.
The only precedents cited by American Heritage in support of the trial court's *474 judgment are three decisions by the Supreme Court of Washington, the first of which was rendered in the year 1917 in the case of Salo v. Pacific Coast Casualty Co.[9] This case involved a surety bond furnished by a jitney bus company pursuant to the requirements of a statute which provided that every person injured by the negligent act of the licensee should have a cause of action against the principal and surety on the bond for all damages suffered by him, and which provided that the full amount of damages could be recovered against the principal but recovery against the surety should be limited to the amount of the bond. The amount of bond furnished in that case was in the penal sum of $2,500.00. As a result of the negligent operation of a jitney bus, several persons were injured whose suits against the licensee resulted in judgments in their favor in various amounts, the aggregate of which far exceeded the $2,500.00 limitation contained in the surety bond. All injured plaintiffs thereupon made claim against the surety company, each seeking recovery of the full amount of their damages up to the penal limits of the bond.
In that case the court turned its decision on its construction of the language of the statute and the bond itself and was concerned primarily with that clause of the statute which provided that: "The recovery against the surety shall be limited to the amount of the bond". The court recognized that if the quoted language of the statute and bond were omitted therefrom, the proper construction would be to limit the liability upon the bond to the penal amount of $2,500.00 provided therein no matter how many persons may have been injured or the aggregate amount of the verdicts which they had obtained. The court construed the quoted language, however, to signify a legislative intent that each and every person injured as a result of the negligent operation of the jitney bus could recover the full amount of his damages against the surety up to the bond limits of $2,500.00. It was the particular language contained in the Washington statute which impelled the court to reach the conclusion it did, the result of which is contrary to the holdings of the great weight of authority in the United States.
The decision of the Supreme Court of Washington in Salo, supra, was subsequently followed by that court in Commercial State Bank v. Palmerton-Moore Grain Co.,[10] and Paulsell v. Peters.[11] All three decisions turned on the peculiar wording of the statutes involved in those cases, which controlling language does not appear in the mortgage brokerage act under consideration in the case sub judice.
Even though the decisions rendered by the Supreme Court of Washington might be said to have a rational basis, the results reached have been criticized and rejected by all other courts of this country considering the question of law with which are here concerned.[12]
Based upon the foregoing authorities, it is our conclusion that appellant's liability on the bond furnished by it in this case is limited to the penal amount of $5,000.00 as expressed therein, which sum shall be awarded to appellee in full satisfaction of its several claims against the defaulting mortgage broker. Since all of the claims made against this bond are held by appellee, there is no need that the amount of the bond be prorated in the proportion that each claim bears to the whole as would be necessary if the claims were made by separate *475 individuals. If it is the intent of the legislature that a surety bond furnished by a mortgage broker under the terms of F.S. Chapter 494, F.S.A., should be liable in full penal amount for each and every claim filed by each and every person who may suffer damages as the result of the default of the principal named in the bond, the statute must so provide in clear and unequivocal terms. The obligations assumed under the bond filed pursuant to the requirements of the existing statute may not be increased by judicial interpretation in accordance with what this court might deem to be desirable as a matter of public policy. This privilege falls within the prerogatives of the legislature, but not the judiciary.
We have carefuly considered the point raised by appellee's cross-appeal but find it to be without substantial merit. The judgment appealed is reversed and the cause remanded with directions that an appropriate judgment be rendered in accordance with the holding expressed herein.
SPECTOR, C.J., JOHNSON, J., and MELVIN, W., Associate Judge, concur.
NOTES
[1] F.S. Ch. 494, F.S.A.
[2] F.S. § 494.04(12), F.S.A.
[3] 12 Am.Jur.2d 508-509, Bonds, § 45.
[4] 12 Am.Jur.2d 510, Bonds, § 47.
[5] Humphreys v. Leggett, 9 Howard 297, 13 L.Ed. 145.
[6] Guffanti v. National Surety Co., 196 N.Y. 452, 90 N.E. 174.
[7] Brown v. National Surety Corporation, (1946), 207 S.C. 462, 36 S.E.2d 588, 590, 591.
[8] Worden v. Hunt (Fla.App. 1963) 147 So.2d 548, 550.
[9] Salo v. Pacific Coast Casualty Co., (Wash. 1917), 95 Wash. 109, 163 P. 384.
[10] Commercial State Bank v. Palmerton-Moore Grain Co., (1929), 152 Wash. 89, 277 P. 389.
[11] Paulsell v. Peters, (1941), 9 Wash.2d 599, 115 P.2d 708.
[12] Brown v. National Surety Corporation, supra note 7; Wiggins v. Pacific Indemnity Co., (1933), 134 Cal. App. 328, 25 P.2d 898, 900; New Amsterdam Casualty Co. v. Hyde, (Or. 1934), 148 Or. 229, 34 P.2d 930, 934, 35 P.2d 980.